STATE of Minnesota, Respondent,

v.

Betty Jean SOUTHERN, Appellant.

No. 51356.

Supreme Court of Minnesota.

March 20, 1981.

C. Paul Jones, State Public Defender, and Kathy King, Asst. State Public Defender, Minneapolis, for appellant.

Warren Spannaus, Atty. Gen., Thomas W. Foley, County Atty., and Steven C. DeCoster, Asst. County Atty., St. Paul, for respondent.

YETKA, Justice.

Defendant was found guilty by a district court jury of negligent vehicular homicide, Minn.Stat. § 609.21 (1980), and was sentenced by the trial court to a maximum 5-year prison term. On this appeal from judgment of conviction, defendant contends that her conviction should be reversed outright because the evidence that she was grossly negligent or that her gross negligence caused the victim's death was legally insufficient. Alternatively, she contends that she is entitled to a new trial because the trial court erred in admitting evidence concerning statements defendant made to the police and in instructing the jury. We affirm.

1. The first issue which merits discussion is defendant's contention that the

evidence that she was grossly negligent or that her gross negligence caused the victim's death was legally insufficient.

Defendant was driving a truck on a residential street in St. Paul one morning when the truck hit a 5-year-old boy on his way to kindergarten. Instead of stopping, defendant accelerated, left the scene, and, with the help of others, ditched the truck hoping to make it appear that someone else had stolen the truck and was responsible for the accident.

The state seemingly concedes in its brief that there was no evidence that defendant actually was exceeding the speed limit at impact, but argues that defendant was driving faster than prudence would have allowed because (a) by her own admission, she was driving into the sun, which was very bright (a fact corroborated by a meteorologist called by the defense), and (b) she was in a school zone and knew it, both from traffic signs and from having traveled the route before.

We disagree with the state's contention that the evidence established beyond a reasonable doubt that defendant was driving in a grossly negligent manner up to the point of impact.

Defendant's conduct in accelerating and leaving the scene clearly was gross negligence, however, and we are satisfied that the state's evidence sufficiently established that gross negligence to be a substantial factor causing the child's death. There was testimony that defendant's gross negligence resulted in the child being dragged approximately 175 feet before his body came to rest, a far greater distance than he would have been dragged if defendant had stopped immediately after impact instead of fleeing. The two main injuries which led to the child's death were a head injury which probably, but not necessarily, occurred at impact and a neck injury which may have occurred at impact or while the child was being dragged. But for defendant's gross negligence, the child may well have survived. Of course, we will never know this because defendant, by her gross

negligence in failing to stop and in leaving the scene, made it impossible to determine this. Further, her conduct also had the effect of ensuring the child's death. We are satisfied after a careful review of the record that the evidence established defendant's grossly negligent driving to be a substantial causal factor in the child's death.

2. The second issue raised by defendant relates to the propriety of trial court rulings on the admissibility of defendant's statements to the police at her apartment and at the station. The story given to the police was that she had not driven the truck.

■ Defendant's lies at the house were in response to police questions which were not preceded by a *Miranda* warning, but defendant was not in custody nor did she have reason to believe she was in custody.[1]

■ As for the statement at the station, defendant challenged its admissibility on two grounds: (a) that it was involuntary, induced by a threat to arrest defendant's mother, and (b) that it was obtained in violation of *Miranda*, since the police officer questioned defendant after she said she wanted an attorney. The statement in question consisted of defendant simply repeating that she had not driven the truck. While the statement was perhaps voluntary, it clearly was obtained in violation of *Miranda*. Thus, the trial court appropriately ruled that the statement was not admissible in the state's case in chief but that it would be admissible as impeachment evidence if defendant testified and made statements to the contrary. The United States Supreme Court's recent opinion in *United States v. Havens*, 446 U.S. 620, 100 S.Ct. 1912, 64 L.Ed.2d 559 (1980), allows use of such an otherwise inadmissible statement to impeach statements made by the accused even in response to government cross-examination if that cross-examination is reasonably suggested by the accused's direct examination. Here defense counsel, on direct examination of defendant, arguably opened

1. *See Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

the door to this matter by eliciting from defendant an admission that she may have lied at her house because she was so upset and that she was still upset at the police station. In any event, there was evidence that was clearly admissible—statements to friends—which showed defendant was still lying about this matter a number of days after the accident so the evidence could not have been prejudicial.

3. Defendant's final contention relates to the trial court's instructions. Looking at the instructions as a whole, we do not find error.

Affirmed.

SIMONETT, Justice (dissenting).

The majority opinion states that the evidence of defendant's driving up to the point of impact does not establish, beyond a reasonable doubt, gross negligence. I agree.

The opinion also states the evidence of defendant's driving after the point of impact does sufficiently establish gross negligence which could be seen by the jury as a substantial factor causing the child's death. I agree.

My concern, however, is that, due to misleading instructions from the court, the jury may have based its verdict on the assumptions defendant was grossly negligent before the point of impact or that death was caused by impact.

In final argument, the state argued defendant's overall conduct, both before and after impact, was grossly negligent. Defense counsel argued that the initial impact killed the boy; that defendant's conduct, if grossly negligent, became so only after impact and, therefore, any gross negligence did not cause the boy's death. The court's instructions made no distinction between conduct prior and subsequent to impact, stating only that defendant must have caused the death of Lonnie Carlson by operating a motor vehicle in a grossly negligent manner.

The jury went out at about 12:25 p.m. It returned at 2:15 p.m. with a written question: "Does gross negligence pertain to previous to accident, at point of impact and immediately afterward?" The court read again the definition of criminal negligence and of gross negligence, and then went on:

I'm not sure whether this answers the question or not. But we're talking about, the question reads, "Does gross negligence pertain to previous to accident." Do you mean pertain to the time previous, or at the point of impact, or immediately afterwards. *It's all pretty much one event.* At the point of the accident, it's one-tenth of a second at the very instant now. You're talking about the operation of a motor vehicle in a manner which caused the death by careless use of that automobile grossly negligent use.

[Emphasis added.] This instruction may have left the jury with the impression it should not make a distinction between defendant's conduct before and after impact, a distinction which defense counsel recommended and this court has adopted.

Believing it impermissible to distinguish between prior and subsequent conduct, the jury might have based its verdict on any one of several erroneous assumptions. The jury might have determined the child's death was caused by impact and that defendant's conduct was at that time grossly negligent, a conclusion the majority here would find incorrect. Or it might have determined death was caused by impact and that defendant's grossly negligent conduct after impact could support a guilty verdict, a conclusion both improper and illogical.

Defense counsel failed to object to the court's instruction to the jury, but the issue is critical enough and, in light of the juror's question and the trial court's response thereto, the likelihood of misunderstanding great enough that it seems to me a new trial is required. *Cf. State v. Carlson,* 268 N.W.2d 553 (Minn.1978).

OTIS, Justice (dissenting).

I join in the dissent of Justice Simonett.

WAHL, Justice (dissenting).

I join in the dissent of Justice Simonett.