STATE of Minnesota, Appellant,

v.

Peter AGUIRRE, Jr., Respondent.

No. 51206.

Supreme Court of Minnesota.

July 3, 1980.

---

Warren Spannaus, Atty. Gen., St. Paul, Robert F. Carolan, County Atty., and Mark Nathan Lystig, Asst., Hastings, for appellant.

Victor Anderson, St. Paul, for respondent.

SHERAN, Chief Justice.

This is a pretrial appeal by the state from an order of the district court which suppressed blood test results in a prosecution of defendant for driving while under the influence of alcohol, driving with blood alcohol in excess of .10% by weight, and careless driving and dismissed the prosecution for driving with blood alcohol in excess of .10% by weight.[1] The issue on appeal is this: when an officer—without administering an implied consent advisory, without obtaining voluntary consent, and without obtaining a warrant or arresting the driver, but acting fully in compliance with the Federal Constitution—directs the medical removal of a blood sample from an apparently intoxicated, but conscious driver who likely was the cause of a fatal automobile accident, may the chemical analysis of the blood sample be admitted in a subsequent prosecution of the driver for driving while under the influence, driving with blood alcohol in excess

---

1. The prosecution is for misdemeanor offenses and therefore normally would be in county court. However, since the prosecution was commenced by indictment, rather than complaint, it is in district court. The rules governing pretrial appeals by the state do not contemplate this situation. If the prosecution had been in county court, the state would have an express right to appeal the decision to the district court. If the prosecution had been for a gross misdemeanor or a felony, the state would have an express right to appeal to this court. The state, in order to protect itself, sought and obtained permission to appeal.

of .10% by weight and careless driving? Holding that the blood test evidence is admissible in this situation, we reverse the order of the trial court and remand for trial.

Early on the morning of November 17, 1979, defendant, driving an automobile on Highway 110 in Inver Grove Heights, rear ended an automobile being driven by one Michael Burger, who was in the left lane driving preparatory to turning onto the cross-over connecting the east and west lanes of 110. The crash caused a fire in the Burger vehicle and a young passenger was burned to death.

The state trooper investigating the accident had probable cause to believe that defendant had been drinking. Because of this and because of the fatality he concluded that it was necessary to obtain a blood sample whether or not defendant consented to it. Accordingly, he went to the hospital where defendant was being treated and told defendant that he would order the removal of blood if defendant did not consent. Defendant agreed to cooperate. The issue on this appeal is the admissibility of the resulting chemical analysis of the blood taken from defendant.

The grand jury apparently refused to indict defendant for criminal negligence under Minn.Stat. § 609.21 (1978), finding instead probable cause to charge defendant with the misdemeanor offenses.

The district court ruled that the evidence, while constitutionally obtained, was not admissible in this prosecution because the officer failed to arrest defendant.

■ 1. The district court correctly concluded that there was no constitutional barrier to admitting the evidence. In *State v. Oevering*, 268 N.W.2d 68 (Minn.1978), we upheld, against a constitutional attack, the warrantless nonconsensual removal of blood from an unconscious person (or one not capable of giving consent) who was not placed under arrest. We excused the lack

of a formal arrest in that situation because "it would be absurd to demand the performance of an arrest ritual" when the person to be arrested is unconscious or incapable of understanding and communicating with the police. While we emphasized, in a footnote, that "a formal arrest should be effected whenever the suspect appears capable of understanding and communicating with the arresting officer," we stopped short of expressly retaining the arrest requirement for more lucid suspects. 268 N.W.2d 73, n. 4.

■ Today we hold that even though the defendant was capable of communicating with the officer, the nonconsensual warrantless removal of his blood still was constitutional notwithstanding the lack of an arrest. As Professor LaFave points out, a search in this situation "should be deemed permissible whenever the greater intrusion of arrest *and* search would have been lawful." 2 LaFave, *Search and Seizure*, § 5.4(b) (1978). In other words, the constitutional prerequisite to the warrantless nonconsensual removal of blood of a conscious or unconscious driver is the same: probable cause plus exigent circumstances. *See State v. Dewey*, 272 N.W.2d 355 (Minn. 1978).[2]

2. The statutory issue requires that we consider the scope and effect of Minn.Stat. § 169.121, subd. 2, (1978), which provides as follows:

Subd. 2. Upon the trial of any prosecution arising out of acts alleged to have been committed by any person arrested for driving, operating, or being in physical control of a motor vehicle in violation of subdivision 1, the court may admit evidence of the amount of alcohol or a controlled substance in the person's blood, breath, or urine as shown by a medical or chemical analysis thereof, if the test is taken voluntarily or pursuant to section 169.123 [the implied consent law].

This statute clearly has no application to a prosecution for criminal negligence resulting in death. Thus, we held in a criminal

2. We note, however, that a defendant is always free to argue at the omnibus hearing that the officer's failure to arrest him casts doubt on the officer's testimony that he believed he had probable cause.

negligence prosecution that chemical analysis of blood is admissible even if it is not obtained voluntarily or in compliance with the implied consent law, so long as it is not obtained in violation of the Constitution. *State v. Dewey, supra; State v. Capelle,* 285 Minn. 205, 172 N.W.2d 556 (1969).

■ The purpose of the statute is to protect ordinary drivers suspected of driving while under the influence from being subjected to nonconsensual removal of blood even in situations where the Constitution would allow the nonconsensual removal of blood. Thus, if an officer merely has probable cause to arrest a driver for driving while under the influence or driving with blood alcohol in excess of .10% by weight, the statute does not give the officer any incentive to order a nonconsensual removal of the driver's blood because only blood removed voluntarily or in compliance with the provisions of the implied consent law will be admissible in any subsequent prosecution for driving while under the influence of alcohol or driving with blood alcohol in excess of .10% by weight.

■ An example of voluntary removal of blood would be where an officer does not give an implied consent advisory but simply asks the driver if he will consent to a blood test. *State v. Rossow,* 310 Minn. 399, 247 N.W.2d 398 (1976). Blood is removed in compliance with the implied consent law if (a) the advisory is read to the driver and he consents to the removal of blood or (b) the removal of blood from the driver is deemed consensual, as where the driver's condition precludes him from refusing to consent and his consent is implied. *State, Dept. of Public Safety v. Wiehle,* 287 N.W.2d 416 (Minn. 1979), is a case in which we held that when a driver's condition precludes him from refusing to consent, his consent is implied by the implied consent law. The only prerequisite to reliance on the *Wiehle* approach to finding that the removal was consensual in accordance with the implied consent law is that the removal not violate the Constitution.

■ In this case the removal of blood was not even impliedly consensual. The only way one can justify the admission of the evidence in this prosecution is to hold that § 169.121, subd. 2 (1978), does not apply.

The officer in this case did not arrest defendant for driving while under the influence with blood alcohol in excess of .10% by weight; in fact, he did not arrest defendant at all. What the officer was confronted with was not the ordinary case, that is, a case involving a stopped driver suspected of violating § 169.121. Rather, the officer was confronted with a situation in which he had probable cause to believe that defendant driver was not only intoxicated but had just committed the felony offense of criminal negligence resulting in death, § 609.21 (1978). In such a situation he knew that it was essential that he obtain the blood sample without delay and without regard to whether defendant would consent to the removal of a blood sample. Accordingly, he did not follow the formality of first trying to obtain defendant's consent; instead, he simply ordered the removal of the blood sample, as he had a right to do under the Constitution. Minn.Stat. § 169.121, subd. 2 (1978), was not drafted with this situation in mind, and the officer was not trying to defeat the purpose of that statute. In fact, even if the officer had tried and failed to get defendant's voluntary consent or his consent pursuant to the implied consent law, we still would be faced with the problem of whether this statute would bar the admission of the test results in this prosecution. The test results clearly would be admissible in a criminal negligence prosecution. The fact that the grand jury chose not to indict defendant for that offense was a benefit to defendant. Suppressing the evidence and thereby making prosecution of defendant on the less serious misdemeanor charges more difficult would only have the effect of benefiting defendant more without furthering the purpose served by § 169.-121, subd. 2, of protecting the ordinary conscious but intoxicated driver from nonconsensual removal of blood.

In summary, we hold that the statute does not bar the use of nonconsensual blood test evidence in misdemeanor prosecutions when the prosecutions arise from the situation in which the driver initially was believed to have committed the far more serious offense of criminal negligence.

Reversed and remanded for trial.