**STATE of Minnesota, Appellant,**

v.

**Jerry Thomas SPEAK, Respondent.**

**No. C7-83-804.**

Supreme Court of Minnesota.

Nov. 4, 1983.

Rehearing Denied Dec. 8, 1983.

Hubert H. Humphrey, III, Atty. Gen., Tom Foley, Ramsey Co. Atty., Stephen De-Coster, Asst. Ramsey Co. Atty., St. Paul, for appellant.

Samuel A. McCloud, Minneapolis, for respondent.

Hubert H. Humphrey, Atty. Gen., Linda F. Close, James B. Early, Sp. Asst. Attys. Gen., St. Paul, amicus curiae, for Commissioner of Public Safety.

SCOTT, Justice.

This is a pretrial appeal by the state, pursuant to Minn.R.Crim.P. 29.03, from an order of the district court suppressing the results of a breathalyzer test on Fourth Amendment grounds in a prosecution of defendant for criminal negligence resulting in death, Minn.Stat. § 609.21 (1982).[1]

At 2:40 p.m. on October 8, 1982, St. Paul police were called to the scene of a motor vehicle-pedestrian accident at Highland Parkway near Pascal Street. Highland Parkway is a divided east-west road that is two car lengths wide in each direction. The south side of the roadway at that point borders on a golf course. The first officer on the scene, Allen J. Lindell, found the pedestrian, a 19-year-old man named Ron-

---

1. This statute provides that "[w]hoever operates a vehicle ... in a grossly negligent manner and thereby causes the death of a human being" is guilty of a felony and may be sentenced to imprisonment for not more than five years. The legislature recently amended the statute, effective July 1, 1983. Act of March 23, 1983, ch. 12, 1983 Minn.Laws. There are now two subdivisions. Subdivision 1 provides that "[w]hoever, as the result of operating a vehicle ... in a grossly negligent manner, or in a negligent manner while under the influence of alcohol or a controlled substance," causes the death of a human being is guilty of a felony and may be sentenced to imprisonment for not more than 5 years. Subdivision 2 provides a penalty of not more than 3 years if the result is great bodily harm rather than death.

ald Schlichting, lying with his head on the south curb and the rest of his body in the southern-most part of the eastbound half of the parkway. Lindell checked Schlichting but found no pulse.

The paramedics arrived at that point and Lindell, assuming that Schlichting was dead, asked who was the driver. Defendant, who was 32 years old, said he was, and he pointed at a green Ford pickup truck about 80 feet west of the victim; defendant said that after the accident he had backed the truck to that point. Defendant said that he was driving eastbound on Highland Parkway, that the victim ran from the grass south of the parkway onto the road, and that his truck struck him. Defendant, who was very upset, smelled of alcohol. When Lindell asked him if he had been drinking, he said yes. Lindell did not observe or detect any of the other common symptoms of intoxication. Specifically, he did not detect any slurring of speech nor did he notice anything unusual about defendant's eyes or any swaying or weaving when defendant walked. He did not form the opinion that defendant was under the influence of alcohol.

Similarly, in further investigating the accident after he turned defendant over to two other officers, he uncovered no evidence of negligence. None of the witnesses he interviewed said that defendant had been speeding or otherwise driving carelessly. His investigation revealed only that the road had been clear, that defendant had not skidded before or after impact, and that impact had occurred in the street.

The two officers who took charge of defendant were James Campbell and James Gillet. Campbell immediately smelled alcohol on defendant's breath, thought that possibly defendant's speech was somewhat slurred, and felt that defendant could be under the influence of some substance. He asked defendant to accompany him to the squad car to provide more information. According to Campbell, defendant said that he had been driving eastbound on the parkway at about 25 miles per hour and that he had not seen the victim. Campbell gave him a

*Miranda* warning and then asked more questions. Defendant said that he had been drinking, that he had had a few cocktails in the woods with some friends at his job (apparently he works for the public works department) and that the accident happened after he left.

Campbell and Gillet took defendant to headquarters for a test to determine his blood alcohol level. This was pursuant to a police department policy that requires the taking of such a test from any driver involved in a traffic accident resulting in a fatality. On the way to headquarters defendant's speech was "fairly good." Stated differently, defendant was very emotional and his speech seemed normal for that. Similarly, defendant walked normally. Campbell testified that he did not know if defendant was under the influence, that all he could say was the defendant had been drinking and that he was not sloppy drunk by any means. Officer Gillet, who was in defendant's presence on the way to the station, testified similarly.

The officers, who had told defendant that he would have to take a test, read defendant the provisions of the Implied Consent Law Advisory. At 3:20 p.m. defendant asked for and received permission to call an attorney. His attorney was not in but his secretary promised to have him call defendant back momentarily. After more delay, the attorney called. After defendant had been on the phone for a period of time, the officer demanded that defendant come and take a breath test. The test, which was apparently administered at 3:50 p.m., revealed that defendant's blood alcohol level was .11%.

■ Thereafter, a grand jury indicted defendant. The evidence that persuaded the grand jury to indict is not part of the record on appeal. Notwithstanding that, the state has made a number of references to it and other material in its brief. Defendant therefore has filed a motion to strike. We agree with defendant and, in deciding this appeal, have not considered any evidence not properly part of the record on appeal.

An implied consent revocation hearing was held before a Ramsey County Municipal Court judge. The judge rescinded the revocation on the ground that the officers did not have probable cause to believe that defendant had violated Minn.Stat. § 169.-121 and therefore had no basis, at least under Minn.Stat. § 169.123, to administer the provisions of the Implied Consent Law. The judge, of course, did not address the issue of whether the breath test was properly administered under some other theory or whether it was admissible in the felony prosecution.

The latter issues were addressed in district court at the Rasmussen hearing. The district court interpreted United States Supreme Court and Minnesota cases as requiring probable cause before forcing a defendant to submit to a blood or breath or urine test in this situation—that is, probable cause to believe that the driver was driving under the influence of alcohol or was guilty of the crime of criminal negligence. The court concluded that there was no such probable cause in this case.

On appeal, the state argues that the officers had probable cause to believe that the breath test would result in the discovery of evidence that defendant had committed a crime, but the state also argues that probable cause of this sort was not needed, that only articulable suspicion was needed to detain defendant for a breath test, the breath test either not constituting a search or, at most, constituting a very limited search that was clearly justified here.

■ Our starting point is with the proposition that ordinarily the administration of a blood alcohol test—direct blood, breath or urine—is governed by Minn.Stat. §§ 169.-121 and 169.123. Section 169.121, subd. 2, provides for the admission of the test results in a DWI prosecution only if the test was taken voluntarily or pursuant to the Implied Consent Law. As stated in *State v. Aguirre*, 295 N.W.2d 79, 82 (Minn.1980), "The purpose of the statute is to protect ordinary drivers suspected of driving while under the influence from being subjected to nonconsensual removal of blood even in situations where the Constitution would allow the nonconsensual removal of blood." Thus, in the ordinary case where the officer merely has probable cause to arrest for driving while under the influence or driving with blood alcohol in excess of .10% by weight, the statute does not give the officer any incentive to forcibly or nonconsensually remove the driver's blood.

■ As discussed in *Aguirre*, the statute has no application to a prosecution for criminal negligence resulting in death. Chemical analysis of blood is admissible in such a prosecution even if it is not obtained voluntarily or in compliance with the Implied Consent Law, as long as it is not obtained in violation of the Fourth Amendment.

The earlier cases of this court assumed that a valid arrest was a constitutional prerequisite to a nonconsensual removal of blood to determine blood alcohol content. *See, e.g., State v. Hansen*, 296 Minn. 42, 206 N.W.2d 352 (1973).

Then, in *State v. Oevering*, 268 N.W.2d 68 (Minn.1978), this court upheld the warrantless nonconsensual removal of blood from an unconscious person who was not placed under arrest. We excused the lack of formal arrest because the driver was unconscious and it would be absurd to demand the performance of an arrest ritual in such a situation. The key points underlying our decision were (a) our view, recognized in *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), that blood testing is a minimal, relatively unobtrusive kind of search, (b) the fact that immediate action was needed to avoid the loss of evidence, and (c) the fact that the officers had probable cause to arrest Oevering on criminal negligence grounds. In making this last point, we said as follows:

Finally, we have little difficulty concluding that Officer Berge had probable cause to arrest Oevering on criminal negligence grounds when the blood sample was drawn. When Berge arrived at the hospital, he knew a traffic accident involving a fatality had occurred. Berge also testified that Oevering smelled of

alcohol and that Beranek had identified Oevering as the driver of the truck. 268 N.W.2d at 74.

In *State v. Aguirre*, 295 N.W.2d 79 (Minn. 1980), we went one step beyond the holding in *Oevering*, holding that even though the defendant was capable of communicating with the officer, the nonconsensual warrantless removal of his blood still was constitutional notwithstanding the lack of an arrest. Specifically, we held that the "constitutional prerequisite to the warrantless nonconsensual removal of blood of a conscious or unconscious driver is the same: probable cause plus exigent circumstances." 295 N.W.2d at 81.

■ Exigent circumstances were clearly present in the instant case, but there is a dispute over whether the officers had the kind of probable cause that we referred to in *Oevering* and *Aguirre*. The state contends that the probable cause that is needed—if probable cause is needed—is probable cause that administration of the breath test will result in the discovery of evidence that defendant has committed the crime of criminal negligence. Defendant, on the other hand, argues that the probable cause that is needed is probable cause to believe that the driver is intoxicated and that he is guilty of criminal negligence. We believe that the probable cause that is needed—assuming that probable cause is needed—is probable cause to believe that the crime of criminal negligence has been committed and probable cause to believe not that the defendant is intoxicated but that administration of the breath test will result in the discovery of evidence that will aid in the prosecution of that crime. Evidence of a defendant's drinking is but one of many factors that bears on a determination of the issue of whether the defendant is guilty of the crime of criminal negligence. As the state points out, ingestion of alcohol in amounts less than those needed to cause gross outward symptoms of intoxication can have a substantial adverse effect on a driver's judgment.

■ We need not decide whether it is enough to establish probable cause that a driver who smells of alcohol has been involved in a fatal accident. In this case there was more than just a fatal accident and a driver who smelled of alcohol. One officer thought that possibly defendant's speech was somewhat slurred and felt that defendant would be under the influence of some substance. There also was evidence that defendant gave conflicting stories to the police—first, that the victim ran into his path; second, that he did not see the victim. The second statement fits with the evidence that no skid marks were found and the evidence that the road was clear. It suggests that the officers, whether or not they knew it, had objective evidence of inattention. In *State v. Southern*, 304 N.W.2d 329 (Minn.1981), the extreme inattention of the defendant, who had apparently not consumed alcohol, was the main legal basis of the defendant's criminal negligence conviction. Thus, in this case there was not just evidence of a fatal accident involving a drinking driver but also evidence of inattention. We believe that this was enough to establish probable cause to believe that defendant had committed the crime of criminal negligence. That being so, the fact that the officers did not think along these lines does not matter. This is because the issue is whether there was objective probable cause, not whether the officers subjectively felt that they had probable cause. *Scott v. United States*, 436 U.S. 128, 98 S.Ct. 1717, 56 L.Ed.2d 168 (1978); *State v. Ludtke*, 306 N.W.2d 111 (Minn. 1981).

Reversed and remanded for trial.

Respondent is awarded $400 as attorney fees on this appeal.