STATE of Minnesota, Respondent,

v.

Jerome Joseph SCHAUER, Appellant.

No. C7–92–2186.

Court of Appeals of Minnesota.

June 15, 1993.

Hubert H. Humphrey, III, Atty. Gen., Natalie E. Hudson, St. Paul City Atty., Elizabeth Beltaos–Nolen, Deputy City Atty., Virginia D. Palmer, Asst. City Atty., St. Paul, for respondent.

Richard P. Clem, Clem & Crosby, Minneapolis, Kevin E. Garaghty, Jane J. Larson & Associates, Roseville, for appellant.

Considered and decided by AMUNDSON, P.J., and CRIPPEN and DAVIES, JJ.

## OPINION

CRIPPEN, Judge.

This appeal is from a judgment of conviction and sentence for gross misdemeanor DWI. After the court denied appellant Schauer's motion to suppress the blood test, Schauer waived a jury trial and stipulated to the state's case. *See State v. Lothenbach*, 296 N.W.2d 854, 858 (Minn. 1980) (procedure for expediting appellate review of suppression issue). We affirm.

## FACTS

Appellant James Schauer's car rolled over after striking a parked vehicle. Schauer was the only occupant. Police found Schauer trapped behind the steering wheel, his face bleeding.

The officer who responded to the scene testified at the omnibus hearing that she concluded Schauer's injuries could be serious, but that he was able to talk and answer questions. The officer testified Schauer's eyes were red and watery and she suspected, taking into account the circumstances of the accident, that he was intoxicated.

The officer testified that her supervisor, who was at the scene, told her to go down to the hospital and have Schauer's blood drawn. She went to the hospital and ordered the blood test. No implied consent advisory was given, nor was Schauer asked to consent to testing. The blood test showed a .30 alcohol concentration.

Schauer moved to suppress the blood test result because he had not been given the implied consent advisory. The trial court denied the motion, ruling there was proba-ble cause to believe Schauer was driving while intoxicated and that exigent circumstances justified the taking of the blood sample. The court noted a 1984 amendment removing the condition that a test offered in a DWI prosecution must have been taken "voluntarily or pursuant to [the implied consent statute]." 1984 Minn.Laws ch. 622, § 7; *see also* Minn.Stat. § 169.121, subd. 2 (1984).

## ISSUE

Did the trial court err in refusing to suppress the blood test results?

## ANALYSIS

Schauer contends that police lacked probable cause to order blood testing and that there were no exigent circumstances justifying a warrantless search. He also raises the question of whether chemical testing evidence is admissible in a DWI prosecution where the officer has made no attempt to comply with the implied consent statute.

When reviewing an order on a suppression issue where the facts are not in dispute and the decision is a question of law, the reviewing court may independently review the facts and determine whether the evidence need be suppressed. *State v. Othoudt*, 482 N.W.2d 218, 221 (Minn.1992); *State v. Storvick*, 428 N.W.2d 55, 58 n. 1 (Minn.1988). On given facts, a reviewing court may determine probable cause as a matter of law. *See Berge v. Commissioner of Pub. Safety*, 374 N.W.2d 730, 732 (Minn.1985) (where trial court accepts officer's testimony, the court's decision on the validity of a motor vehicle stop should be reviewed as a matter of law). The test for probable cause is objective, viewed from the perspective of a "prudent and cautious" police officer. *See Hedstrom v. Commissioner of Pub. Safety*, 410 N.W.2d 47, 49 (Minn.App.1987).

### 1. Probable Cause

Schauer presented no evidence to contradict the testimony of the police officer. The trial court memorandum credits

the officer's testimony that before ordering a blood test she observed Schauer's eyes to be red and watery, smelled alcohol on his breath, and heard him admit to "a bit" of drinking. In addition, the officer knew Schauer had been in a one-car accident shortly after bar-closing time and she estimated from the physical evidence of the accident that he had been speeding. This was sufficient to establish probable cause to believe Schauer had been driving while under the influence of alcohol. *See id.* at 48–49 (probable cause existed where driver was involved in one-car accident around bar-closing time and officer observed indicia of intoxication). The police officer's estimate of the cause of the accident is not comparable to a full-fledged accident reconstruction. Nor is it necessary in establishing probable cause.

#### 2. Warrantless Seizure

Appellant contends he was entitled to an advisory under Minnesota's implied consent statute. If the advisory was not mandated by statute, he contends the police violated his constitutional rights by taking a blood sample without a warrant.

 Appellant has produced no authority and we find none to suggest a deprivation of constitutional rights in this case. The Minnesota Supreme Court last addressed this question in *Tyler v. Commissioner of Pub. Safety,* 368 N.W.2d 275, 278 (Minn.1985):

> As a matter of federal constitutional law, the warrantless removal of blood for a blood alcohol test is clearly permitted if police have probable cause to believe that the defendant has committed the offense of DWI and that the removal of blood is necessary to preserve evidence of the defendant's guilt. *South Dakota v. Neville,* 459 U.S. 553, 558–64, 103 S.Ct. 916, 920–23, 74 L.Ed.2d 748 (1983); *Cupp v. Murphy,* 412 U.S. 291, 93 S.Ct. 2000, 36

L.Ed.2d 900 (1973); *State v. Aguirre,* 295 N.W.2d 79 (Minn.1980); 2 W. LaFave, Search and Seizure § 5.4(6), n. 19, at 343 (1978 & Supp.1985).

Schauer contends there were no exigent circumstances justifying the warrantless removal of blood. *See generally Schmerber v. California,* 384 U.S. 757, 770–71, 86 S.Ct. 1826, 1835–36, 16 L.Ed.2d 908 (1966) (warrantless removal of blood does not violate the Fourth Amendment if police have probable cause and there are exigent circumstances). Schauer concedes that evidence of intoxication dissipates rapidly. *See, e.g., State v. Oevering,* 268 N.W.2d 68, 74 (Minn.1978).

There is no support for appellant's argument that the requisite exigency is limited to felony driving offenses.[1] Also, although blood was removed from an unconscious subject in *Schmerber,* we have located no authority that consciousness alone enlarges a subject's Fourth Amendment rights. *See Aguirre,* 295 N.W.2d 79, and *Tyler,* 368 N.W.2d 275 (conscious drivers).

We observe that we have not had presented in this case additional constitutional issues that may arise due to the legislature's alteration of the implied consent statute.

a. The parties have not argued, nor have we considered whether the exigency permitting a warrantless seizure is diminished because the police could attempt to get the sample by giving the implied consent advisory. The possibility of obtaining consent may be relevant to whether police may make a warrantless entry into the home. *See, e.g., Welsh v. Wisconsin,* 466 U.S. 740, 743 n. 1, 104 S.Ct. 2091, 2094 n. 1, 80 L.Ed.2d 732 (1984); *State v. Halla–Poe,* 468 N.W.2d 570, 573 (Minn.App.1991). But the implied consent procedure is a statutory one, which the Supreme Court has held is not constitutionally required. *South Da-*

---

1. The officer here apparently relied on a department policy of ordering testing in cases in which criminal vehicular operation could be charged. Schauer, however, was involved in a one-car accident and had no passengers. A prosecution for criminal vehicular operation requires injury to one other than the driver.

Minn.Stat. § 609.21, subd. 2 (1992). Thus, police did not have probable cause to arrest Schauer for criminal vehicular operation, or to justify the warrantless removal of blood under *State v. Speak,* 339 N.W.2d 741, 744–45 (Minn. 1983) and *State v. Aguirre,* 295 N.W.2d at 81.

*kota v. Neville,* 459 U.S. 553, 565, 103 S.Ct. 916, 923, 74 L.Ed.2d 748 (1983) (right to refuse testing is only a matter of grace).

b. As now amended, the statute may give officers incentive in particular cases to order nonconsensual removal of blood without reading the advisory. *Cf. Aguirre,* 295 N.W.2d at 82 (preamendment language gave no incentive to avoid advisory). The problems involved in a selective use of the implied consent advisory must await the proper case.

c. The parties have not argued and we have not considered the question of whether relevant search and seizure prohibitions under the Minnesota Constitution are more expansive than has been recognized under the federal constitution.

### 3. Implied consent statute

The DWI statute was amended in 1984 to remove language requiring that, as a condition of admissibility in a DWI prosecution, blood alcohol testing must be taken "voluntarily or pursuant to section 169.123 [the implied consent statute]." *See* 1984 Minn. Laws ch. 622, § 7; *see also* Minn.Stat. § 169.121, subd. 2 (1984). This court has held that the 1984 amendment allows admission of the test result in the DWI proceeding although police have not complied with all the procedures of the implied consent law. *See State v. Aschnewitz,* 483 N.W.2d 107, 108 (Minn.App.1992); *State v. Pittman,* 395 N.W.2d 736, 738 (Minn.App. 1986). This is the first case involving an ordinary DWI, in which no attempt was made to comply with the implied consent statute.

The supreme court has stated, in a civil revocation proceeding where the officer did not read the implied consent advisory, "the results of the chemical analysis of [the driver's] blood could be used in a prosecution of [the driver] for DWI." *Tyler,* 368 N.W.2d at 281. This court has reiterated that "[w]hen the implied consent advisory is not given, the results of a blood test may be used in the prosecution of a DWI." *State v. Scott,* 473 N.W.2d 375, 377 (Minn. App.1991) (citing *Tyler,* 368 N.W.2d at 281). Although these statements are dicta, they accord with the plain language of the statute.

The 1984 amendment by its terms eliminates any statutory mandate for compliance with implied consent procedures as a condition of admissibility in the DWI prosecution. *See* Minn.Stat. § 169.121, subd. 2 (1992) (court may admit evidence of blood, breath or urine testing). This court must construe a statute in accordance with its plain meaning. *State v. Lewis,* 394 N.W.2d 212, 217 (Minn.App.1986), *pet. for rev. denied* (Minn. Dec. 12, 1986). An amendment to a statute is presumed to have been intended to make some change in existing law. *Larson v. Independent Sch. Dist. No. 314,* 289 N.W.2d 112, 122 (Minn.1979). The 1984 amendment unambiguously removed all previous limits on admissibility. *See generally Lenz v. Coon Creek Watershed Dist.,* 278 Minn. 1, 9, 153 N.W.2d 209, 216 (1967) (where language is plain and unambiguous, examination into legislative intent is not permitted).[2]

It is evident the legislature could have more boldly eliminated the mandate for implied consent advisories by repealing the implied consent statute or modifying it to remove any occasion for a driver's refusal to submit a sample. Because this was not done, the impact of the 1984 amendment has been muted until now.[3] But the real

---

**2.** We observe that the legislative history in this instance confirms the plain meaning of the statute. The deletion of the language limiting admissibility of the test results originated in the House of Representatives. *See* H.F. 1400, 73rd Minn.Leg. (1984). Proponents of the House version repeatedly expressed the intent to make blood alcohol testing mandatory. *See, e.g.,* Hearing on H.F. No. 1400 Before the House Committee on Judiciary (April 12, 1984). The language amending Minn.Stat. § 169.121, subd. 2 was taken from the House bill and incorporated into the final bill by a conference committee.

Although there is no record of that discussion, it is evident that the legislature intended to remove all barriers to the admission of blood alcohol tests in the DWI proceeding.

**3.** This court in prior cases has understated the effect of the 1984 amendment. *See, e.g., Aschnewitz,* 483 N.W.2d at 109 ("precise compliance" with implied consent advisory not required). Previous cases have not, however, involved an order for testing, in an ordinary DWI prosecution, without any attempt to comply with the implied consent statute.

importance of the 1984 amendment is clear on its face, and we must attribute to the legislature the design to preserve the police alternative to use the implied consent process. Because the legislature has greatly enlarged the penalties for refusal following an implied consent advisory, and because the implied consent process avoids the need to employ force to seek a sample, the legislature may have properly foreseen the continued prevalent use of implied consent advisories.

Declining use of the implied consent advisory would likely alter the historic relationship between the DWI and implied consent statutes.[4] This history, however, does not mitigate against respect for the plain meaning of the current statute.

## DECISION

The trial court did not err in admitting the blood test results.

**Affirmed.**

4. The initial purpose of the implied consent statute was to aid in the enforcement of the DWI law. *State, Dept. of Highways v. Beckey,* 291 Minn. 483, 485, 192 N.W.2d 441, 444 (1971). The link between the two statutes was once considered so strong that if the defendant pleaded guilty to the DWI, "he obviated every legitimate purpose the 'implied consent' statute can have" and his license could not be civilly revoked for refusing testing. *State, Dept. of Highways v. Schlief,* 289 Minn. 461, 463, 185 N.W.2d 274, 276 (1971). If a driver can be convicted of DWI based on a test taken without any attempt to comply with the implied consent statute, part of this link may have been severed.