**STATE of Minnesota, Appellant,**

v.

**Randy Daniel LEE, Respondent.**

**No. C2–97–2096.**

Court of Appeals of Minnesota.

April 21, 1998.

Review Granted June 17, 1998.

Hubert H. Humphrey III, Attorney General, for appellant.

Craig S. Nelson, Freeborn County Attorney, David J. Walker, Assistant County Attorney, for appellant.

Stephen R. Erickson, Albert Lea, for respondent.

Considered and decided by HARTEN, P.J., and SHORT and AMUNDSON, JJ.

## OPINION

HARTEN, Judge.

This appeal is from a pretrial order suppressing blood test evidence in a prosecution for gross misdemeanor DWI and driving without a license. *See* Minn.Stat. §§ 169.121, subd. 1(a), subd. 3(c)(1), 171.02, subd. 1 (1996). We affirm.

## FACTS

On April 26, 1997, respondent Randy Lee was charged with driving while under the influence and driving without a license. The complaint alleged that Lee had been discovered lying injured at the scene of a single-vehicle motorcycle accident at 3:10 a.m., and that a blood sample taken less than two hours later showed an alcohol concentration of .15.

Lee filed a motion to suppress the evidence against him and to dismiss the case. At the omnibus hearing, the state presented the testimony of Officer Michael Wayne, who testified that he responded to a call of an "injury accident" and was the first officer to arrive at the scene. There he found a motorcycle laying in the grass by the side of the road, with visible skid marks leading from a nearby curve in the road. Lee was lying on the ground near the motorcycle. He appeared to be seriously injured and "pretty incoherent."

After Lee had been placed in an ambulance, another officer talked with a woman named Traci Edwin who identified herself as the passenger on Lee's motorcycle. According to Officer Wayne's testimony, Edwin stated that she had been drinking. A preliminary breath test confirmed this. Officer Wayne testified that Edwin complained to him that her wrist or arm was broken, so he took her to the hospital. On the way, Edwin told Officer Wayne that she and Lee had been at a party, where she had been drinking, although she was unsure whether Lee had also been drinking. Edwin also reported that before the accident Lee had tipped over the motorcycle in a parking lot.

When they arrived at the hospital, Officer Wayne proceeded to an emergency room cubicle where medical personnel were working on Lee. Officer Wayne read the implied consent advisory to Lee while Lee was lying on a bed with about a dozen doctors and nurses working on him. He was wearing an oxygen mask and was "somewhat communicative," although he did not answer some of Officer Wayne's questions. Lee told Officer Wayne that he wanted to speak with an attorney, which Wayne realized was impossible due to Lee's injuries and the fact he was being

prepared to be airlifted to the Mayo Clinic. Officer Wayne then asked Lee if he would consent to a blood test, and Lee "clearly said no." Officer Wayne told Lee that because Lee had been involved in an "injury accident," he was going to have a blood sample taken anyway. A blood sample was taken that yielded a finding of .15 alcohol concentration.

The district court granted Lee's motion to suppress the blood test evidence, finding that the taking of the test after Lee had been given the implied consent advisory and had refused testing rendered the test results inadmissible.

## ISSUE

Did the district court clearly err in suppressing the blood test results?

## ANALYSIS

 In a pretrial appeal the state must show clearly and unequivocally that the trial court erred and that the error unless reversed will have a critical impact on the outcome of the prosecution. *State v. Webber,* 262 N.W.2d 157, 159 (Minn.1977). Suppressing a chemical test has critical impact even in DWI cases where the state has non-test-related evidence of intoxication. *State v. Ault,* 478 N.W.2d 797, 798–99 (Minn.App. 1991).

### 1. Nonfelony Criminal Vehicular Offenses: Nonconsensual Testing.

The state argues that the district court clearly erred in ruling that Officer Wayne was not justified in ordering the blood sample drawn from Lee. We disagree.

A long line of cases hold that a police officer may order a blood sample taken from a driver suspected of criminal vehicular operation (CVO) without seeking the driver's consent under the implied consent law. *E.g. State v. Aguirre,* 295 N.W.2d 79, 82–83 (Minn.1980); *State v. Condon,* 497 N.W.2d 272, 275 (Minn.App.1993). But we have held that once the implied consent advisory has been given and the driver has refused to submit to testing (as Lee did here) a test may not be ordered. *State v. Scott,* 473

N.W.2d 375 (Minn.App.1991). Officer Wayne was dispatched to the scene of an "injury accident," where he found Lee lying seriously injured, and learned that Lee's passenger may also have been.injured. He decided to invoke the implied consent law and read Lee the advisory. Once he had done so, and heard Lee refuse, he ordered the test anyway, citing the fact that Lee was involved in an "injury accident."

■ We start our analysis with the traditional rule allowing nonconsensual blood testing in cases of suspected CVO. Police officers in Minnesota, at least since the 1980 *Aguirre* decision, have been able to rely on a "bright-line" rule that a blood test may be taken without reading the implied consent advisory if there is probable cause to believe the driver has committed CVO. *See State v. Schauer*, 501 N.W.2d 673, 675 n. 1 (Minn. App.1993) (noting police department policy of ordering nonconsensual testing in cases in which CVO could be charged). The supreme court in *Aguirre*, in supporting this "bright-line" rule, emphasized the gravity of CVO, a felony offense, as compared with the ordinary misdemeanor DWI case in which the implied consent advisory was mandatory. 295 N.W.2d at 82. The CVO statute, however, has been amended since *Aguirre* to include gross misdemeanor CVO. Minn.Stat. § 609.21, subd. 2b (1996). Given the nature of Traci Edwin's suspected injury, the only CVO offense with which Lee could have been charged was a gross misdemeanor CVO, the same level of offense severity as the gross misdemeanor DWI with which he was ultimately charged.

■ We conclude that the *Aguirre* "bright-line" rule allowing nonconsensual testing should apply to nonfelony CVO offenses such as the offense Lee was suspected of committing here. There is no constitutional barrier to the nonconsensual removal of blood based on probable cause in exigent circumstances. *Schauer*, 501 N.W.2d at 675. The required exigency is not limited to felony

driving offenses. *Id.* It is difficult for police on the scene to make the assessment of the degree of injury to a passenger or occupant of another vehicle that determines whether a driver is ultimately charged with felony or gross misdemeanor CVO. In order that police might still have a "bright-line" rule to apply, we hold that police should be permitted to order the nonconsensual removal of blood whenever they have probable cause to believe the driver has committed CVO, regardless of the level of severity of the suspected offense. This conclusion is in accord with Minn.Stat. § 169.123, subd. 4(a) (1996) (test may be obtained despite refusal where officer has probable cause to suspect violation of section 609.21).

## 2. Application of *Scott* to CVO Suspects.

■ In this case we must address the fact that Officer Wayne, although arguably authorized to order the nonconsensual removal of blood, nevertheless read Lee the implied consent advisory and heard his refusal.[1] An officer is generally bound by that decision and must honor the driver's refusal. *Scott*, 473 N.W.2d at 377. The district court viewed *Scott* as controlling in this case, precluding Officer Wayne from ordering the nonconsensual removal of blood. The state, however, argues that *Scott* is limited to situations in which the driver is not suspected of CVO.

In *Scott*, the police officer came upon the scene of an accident in which the driver had struck a parked car. *Id.* at 376. There were no injuries to any person other than the driver, who therefore could not be suspected of having committed CVO. *Id.* This court noted that the officer was not required to give the driver the implied consent advisory, but only as a matter of constitutional law, not because the officer had probable cause to believe the driver had committed CVO. *See id.* at 376–77 (noting *Aguirre* line of cases,

---

1. The officer arguably could have considered Lee to be so badly injured that he was incapable of deciding whether to submit to testing, and could have proceeded with the nonconsensual removal of blood for that reason. *See Heuton v. Comm'r of Pub. Safety,* 541 N.W.2d 361, 365 (Minn.App.

1995). But because Officer Wayne actually read Lee the advisory we need not address that issue. We find no merit in the state's claim that Lee, who "clearly said no" to testing, was so seriously injured that he should be deemed not to have refused testing.

but relying on lack of any constitutional prohibition against nonconsensual blood testing).

■ The implied consent law prohibits the ordering of a test if the driver has refused it. Minn.Stat. § 169.123, subd. 4(a). The *Scott* court noted that the "civil consequences of refusal" under the implied consent statute would have no meaning if the officer could simply disregard the driver's refusal and order the test. 473 N.W.2d at 377. The requirements of the implied consent law, however, do not apply to a CVO investigation. Minn.Stat. § 169.123, subd. 4(a). The *Scott* court also cited the fundamental unfairness of a police officer misleading a citizen as to his legal obligations. *Id.* at 377–78. It may be confusing for a driver suspected of CVO first to be told he may refuse testing and then have testing ordered over his refusal. But such a driver is not misled in the exercise of his rights as is a driver who is suspected only of DWI and has exercised his right to refuse testing. We conclude, therefore, that the *Scott* holding that a police officer is bound by his decision to read the implied consent advisory does not apply to the situation in which the driver is suspected of CVO. We note that the implied consent statute permitting testing of a person suspected of CVO despite that person's refusal does not distinguish between felony and nonfelony CVO. Minn.Stat. § 169.123, subd. 4(a).

## 3. Probable Cause for Driver Intoxication.

■ The final issue, therefore, is whether Officer Wayne had probable cause to believe that Lee had committed CVO. *See Aguirre,* 295 N.W.2d at 82–83 (nonconsensual blood test may be taken if officer has probable cause to believe driver committed CVO). Officer Wayne knew that Lee had been driving the motorcycle before the accident, and that his passenger, Traci Edwin, may have been injured in the crash. Officer Wayne had driven Edwin to the hospital, and although on this record it does not appear that he knew whether she had actually suffered a broken arm or wrist, he did have probable cause to believe that she had suffered "bodily harm," as required for gross misdemeanor CVO. *See* Minn.Stat. § 609.21, subd. 2b. The

question then becomes whether Officer Wayne had probable cause to believe that Lee was under the influence at the time of the accident. The state does not contend that there was probable cause to believe that Lee's driving was grossly negligent so we need not address that issue. *See* Minn.Stat. § 609.21, subd. 2b(1) (gross misdemeanor CVO may be committed by grossly negligent driving).

■ Probable cause exists if the facts and circumstances would warrant a prudent person in believing that the defendant has committed a crime. *See State v. Harris,* 295 Minn. 38, 42, 202 N.W.2d 878, 881 (1972). Probable cause to believe a driver is under the influence may be based on a single objective indication of intoxication. *Heuton v. Comm'r of Pub. Safety,* 541 N.W.2d 361, 363 (Minn.App.1995). In this case, however, Officer Wayne did not testify that he observed any indicia of intoxication. He merely observed the circumstances of the accident and talked with Lee's passenger, who told him that *she* had been drinking at a party, and that Lee had tipped over the motorcycle earlier in the evening. She did not tell Officer Wayne that Lee had been drinking, and Wayne had no objective indication that such was the case.

We have reversed an implied consent revocation based on a lack of probable cause to request chemical testing from a motorcyclist where the officer observed no indicia of intoxication. *Musgjerd v. Comm'r of Pub. Safety,* 384 N.W.2d 571, 573–74 (Minn.App. 1986). In *Musgjerd,* the motorcyclist had been involved in a one-vehicle accident that had no obvious cause other than driver error. *Id.* at 572. The officer, however,

> made no observations of any indicia of intoxication, such as an odor of alcohol, bloodshot eyes, or slurred speech, nor did appellant state that he had been drinking.

*Id.* at 574. We noted that

> in some cases, the occurrence of an accident may be a factor in determining whether probable cause exists. * * * The circumstances of an accident, [however,] even on a dry road and at 2:30 a.m. * * *,

without more, is insufficient to meet the probable cause requirement.

*Id.*

Our conclusion would be different had Traci Edwin reported that Lee had been drinking. *See Eggersgluss v. Comm'r of Pub. Safety,* 393 N.W.2d 183, 185 (Minn.1986) (holding probable cause existed where driver was involved in one-car rollover accident at 4:30 a.m., driver's breath smelled of alcohol, and passenger reported driver had been drinking). Probable cause, however, may not be based on a mere suspicion that because Edwin was drinking at the party, Lee also had been drinking.

Accordingly, because Officer Wayne did not have probable cause to believe that Lee had been drinking, and therefore lacked probable cause to believe that Lee had committed CVO, he did not have grounds to order nonconsensual blood testing. Therefore, the district court did not clearly err in suppressing the blood test evidence.

### 4. Attorney Fees and Costs.

Lee has filed a motion for an award of attorney fees and costs. A criminal defendant forced to respond to a prosecution pretrial appeal is entitled to reasonable attorney fees and costs. Minn. R.Crim. P. 28.04, subd. 2(6). Lee's attorney seeks $1,730 in attorney fees and $227.04 in costs; these amounts are reasonable and within the range of awards made in similar appeals. We grant Lee's motion for an award of $1,730 in attorney fees and $227.04 in costs.

### DECISION

The district court did not clearly err in suppressing the blood test evidence because the test was taken without Lee's consent under the implied consent law but without probable cause to believe that Lee had committed criminal vehicular operation. Lee's motion for an award of attorney fees and costs is granted.

**Affirmed.**

SHORT, Judge (dissenting).

I respectfully dissent. The trial court erred by suppressing the blood test evidence because Officer Wayne had probable cause to believe Lee had committed criminal vehicular operation. In determining whether an officer has probable cause, the trial court should consider the totality of the circumstances, recognizing that a trained officer may make inferences and deductions that might elude an untrained person. *See State v. Kvam,* 336 N.W.2d 525, 528 (Minn.1983) (quoting *United States v. Cortez,* 449 U.S. 411, 418, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981)). Officer Wayne could infer from (1) the nature of the accident, (2) Lee's earlier mishandling of the motorcycle, and (3) Lee's attendance at a party where drinking had occurred, that Lee was probably impaired due to intoxication.

While one objective indicia of intoxication is sufficient to establish probable cause to believe a person is intoxicated, it should not be a rigid requirement. *Cf. Heuton v. Commissioner of Pub. Safety,* 541 N.W.2d 361, 363 (Minn.App.1995) (concluding police officer needs only one objective indication of intoxication to have probable cause to believe person under influence). To so hold would deprive trial courts of the benefits of inferences and deductions made by trained police officers. Although circumstantial evidence may be as strong as direct evidence and may support a conviction, a rule requiring a physical symptom to establish probable cause limits trained police officers to close-hand observations tantamount to direct evidence of intoxication merely to have probable cause to arrest. *See* 10 *Minnesota Practice,* CRIM-JIG 3.05 (1990) (instructing jury that law does not prefer either direct or circumstantial evidence); *cf. Kvam,* 336 N.W.2d at 528 (officers may make inferences that would elude an untrained person). Such a rule is particularly strained here, where confrontation with extremely serious injuries and application of emergency life-saving procedures could have distracted the officer from focusing on indicia of intoxication.

Based on his experience, Officer Wayne had ample circumstantial evidence from which to conclude there was probable cause to believe Lee was intoxicated. Accordingly, I would reverse.