**STATE of Minnesota, Appellant,**

v.

**Randy Daniel LEE, Respondent.**

**No. C2–97–2096.**

Supreme Court of Minnesota.

Oct. 29, 1998.

Hubert H. Humphrey III, Atty. Gen., St. Paul, David J. Walker, Asst. Freeborn County Atty., Albert Lea, for appellant.

Stephen R. Erickson, Albert Lea, for respondent.

## OPINION

BLATZ, Chief Justice.

This is a pretrial appeal by the state, pursuant to Minn. R.Crim. P. 28.04, of an order of the district court suppressing blood test results in the prosecution of defendant for gross misdemeanor DWI, gross misdemeanor driving with a blood alcohol level of .10 or more within two hours, and misdemeanor driving without a license in violation of Minn. Stat. §§ 169.121, subd. 1(a),(e), subd. 3(c)(1); 171.02, subd. 1, and 171.241 (1996). The court of appeals, in a two to one published decision, affirmed, concluding that the police did not have probable cause to believe defendant had driven under the influence of alcohol and therefore it was improper to order nonconsensual blood testing. *State v. Lee,* 577 N.W.2d 730 (Minn.App.1998). We granted the state's petition for review pursuant to Minn. R.Crim. P. 29.01 and 29.04. Applying the probable cause test that we have articulated in a number of decisions, we reverse the court of appeals and remand to the district court for further proceedings.

Shortly after 3:00 a.m. on Saturday, April 26, 1997, Officer Michael Wayne of the Albert Lea Police Department responded to a one-vehicle motorcycle accident with injuries near the entrance/exit of Edgewater Park. Officer Wayne found defendant, who appeared to be seriously injured, lying on the grass near the motorcycle. Defendant was "pretty incoherent, was flopping around and making a lot of noises as if he was in a lot of pain, wouldn't respond to my questions I was asking him."

Officer Wayne talked with the passenger, Traci Edwin, who said that her wrist or arm apparently had been broken in the accident. Edwin said she and defendant had been at a party and that she had been drinking but

could not say whether defendant had been drinking. Edwin submitted to a PBT (preliminary breath test) which showed she had been drinking.

Asked about the accident, Edwin explained that when they drove down Edgewater Drive and found, at the entrance, that the park was closed, defendant, the driver, stopped the motorcycle and accidently tipped over the motorcycle, causing them both to fall to the ground. She said they then left on the same road they had driven in on and that the accident occurred on a curve in the road.

There were no skid marks in the roadway. Such skid marks would indicate that defendant had attempted to apply the brakes. Rather, a "skid mark came straight off the corner of the roadway, as if the motorcycle hadn't turned to follow the curve, and [the mark] matched up to where the tire of the bike was [lying] * * *."

Officer Wayne was unable to communicate with defendant because defendant was "pretty much incoherent and in a lot of pain and appeared to be very seriously injured." It was obvious to Officer Wayne that it would not have made sense to try to get defendant to submit to any PBT or so-called field sobriety tests at that point. Due to his injuries, defendant was on the ground "rolling about," and Officer Wayne and the paramedics were interested in keeping him still and getting him to the hospital in an ambulance. Officer Wayne took Edwin to the hospital in his squad car.

At the hospital, Officer Wayne read defendant a standard implied consent advisory. When defendant refused to submit to testing, Officer Wayne asked medical personnel to remove a sample of defendant's blood without defendant's permission. A later analysis of the blood sample at the BCA revealed an alcohol concentration of .15.

Defendant was subsequently charged with gross misdemeanor DWI, gross misdemeanor driving with a blood alcohol level of .10 or more within two hours, and misdemeanor driving without a license. The district court suppressed the results of the blood alcohol test, and this pretrial appeal by the state followed. As we indicated at the outset, we reverse the court of appeals' two to one decision affirming the suppression order, and we remand for trial.

Our starting point is the same as the court of appeals' starting point, our decision in *State v. Aguirre*, 295 N.W.2d 79 (Minn.1980). In that case, a DWI prosecution, we upheld the admission of the chemical analysis of blood removed without consent or a warrant from an obviously intoxicated but conscious driver who likely was the cause of a fatal automobile accident. We said:

> [T]he officer was confronted with a situation in which he had probable cause to believe that defendant driver was not only intoxicated but had just committed the felony offense of criminal negligence resulting in death, § 609.21 (1978). In such a situation he knew that it was essential that he obtain the blood sample without delay and without regard to whether defendant would consent to the removal of a blood sample. Accordingly, he did not follow the formality of first trying to obtain defendant's consent; instead, he simply ordered the removal of the blood sample, as he had a right to do under the Constitution. Minn.Stat. § 169.121, subd. 2 (1978), was not drafted with this situation in mind, and the officer was not trying to defeat the purpose of that statute. * * * The test results clearly would be admissible in a criminal negligence prosecution. The fact that the grand jury chose not to indict defendant for that offense was a benefit to defendant. Suppressing the evidence and thereby making prosecution of defendant on the less serious misdemeanor charges more difficult would only have an effect of benefiting defendant more without furthering the purpose served by § 169.121, subd. 2, of protecting the ordinary conscious but intoxicated driver from nonconsensual removal of blood.

*Aguirre*, 295 N.W.2d at 82.

The court of appeals determined that Officer Wayne had probable cause to believe that Edwin had suffered "bodily harm." *Lee*, 577 N.W.2d at 734.

Minnesota Statute § 609.21, subd. 2a (1996) provides, in relevant part:

A person is guilty of criminal vehicular operation resulting in substantial bodily harm and may be sentenced to imprisonment of not more than three years or to payment of a fine of not more than $10,000, or both, if the person causes substantial bodily harm to another as a result of operating a motor vehicle;

(1) in a grossly negligent manner;

(2) in a negligent manner while under the influence of:

(i) alcohol;

(ii) a controlled substance; or

(iii) any combination of those elements;

(3) while having an alcohol concentration of 0.10 or more;

(4) while having an alcohol concentration of 0.10 or more, as measured within two hours of the time of driving;

(5) in a negligent manner while knowingly under the influence of a hazardous substance;

(6) in a negligent manner while any amount of a controlled substance listed in schedule I or II, other than marijuana or tetrahydrocannabinols, is present in the person's body; or

(7) where the driver who causes the accident leaves the scene of the accident in violation of section 169.09, subdivision 1 or 6.

Minn.Stat. § 609.21, subd. 2b (1996) makes it a gross misdemeanor to do the same acts set forth in subdivision 2a if the resulting harm is simply "bodily harm," rather than "substantial bodily harm." While determining that Officer Wayne had probable cause to believe some form of bodily injury existed, the court of appeals concluded that he did not have probable cause to believe that defendant was under the influence of alcohol at the time of the accident because the officer did not observe any of the standard physical indicia of intoxication. *Lee,* 577 N.W.2d at 735. The court stated that its conclusion "would be different had Traci Edwin reported that [petitioner] had been drinking." *Id.*

In the leading case following *Aguirre, State v. Speak,* 339 N.W.2d 741 (Minn.1983), a prosecution for criminal negligence result-ing in death, we articulated as follows the kind of probable cause needed:

We believe that the probable cause that is needed—assuming that probable cause is needed—is probable cause to believe that the crime of criminal negligence has been committed and probable cause to believe not that the defendant is intoxicated but that administration of the [blood alcohol] test will result in the discovery of evidence that will aid in the prosecution of that crime. Evidence of a defendant's drinking is but one of many factors that bears on a determination of the issue of whether the defendant is guilty of the crime of criminal negligence. As the state points out, *ingestion of alcohol in amounts less than those needed to cause gross outward symptoms of intoxication can have a substantial adverse effect on a driver's judgment.*

We need not decide whether it is enough to establish probable cause that a driver who smells of alcohol has been involved in a fatal accident. In this case there was more than just a fatal accident and a driver who smelled of alcohol. One officer thought that possibly defendant's speech was somewhat slurred and felt that defendant would be under the influence of some substance. There also was evidence that defendant gave conflicting stories to the police—first, that the victim ran into his path; second, that he did not see the victim. The second statement fits with the evidence that no skid marks were found and the evidence that the road was clear. It suggests that the officers, whether or not they knew it, had objective evidence of inattention. In *State v. Southern,* 304 N.W.2d 329 (Minn.1981), the extreme inattention of the defendant, who had apparently not consumed alcohol, was the main legal basis of the defendant's criminal negligence conviction. Thus, in this case there was not just evidence of a fatal accident involving a drinking driver but also evidence of inattention. We believe that this was enough to establish probable cause to believe that defendant had committed the crime of criminal negligence. That being so, the fact that the officers did not think along these lines does not matter. This is

because the issue is whether there was objective probable cause, not whether the officers subjectively felt that they had probable cause. *Scott v. United States,* 436 U.S. 128, 98 S.Ct. 1717, 56 L.Ed.2d 168 (1978); *State v. Ludtke,* 306 N.W.2d 111 (Minn.1981).

*Speak,* 339 N.W.2d at 745 (emphasis added). Other decisions following this line of reasoning include *Tyler v. Commissioner of Public Safety,* 368 N.W.2d 275 (Minn.1985) and *State v. Storvick,* 428 N.W.2d 55 (Minn.1988).

■ The court of appeals in this case concluded that, because Officer Wayne observed none of the standard physical indicia of intoxication, he did not have probable cause to believe defendant was intoxicated. *Lee,* 577 N.W.2d at 734. There are two things wrong with this conclusion. As *Speak* makes clear, the probable cause that is needed in this context is not probable cause to believe that the defendant is intoxicated but probable cause to believe that administration of a blood alcohol test will result in the discovery of evidence relevant in the prosecution of a crime. *Speak,* 339 N.W.2d at 745. Further, an officer may have probable cause even if none of the commonly-known physical indicia of intoxication is present. This is because, as we said in *Speak,* "ingestion of alcohol in amounts less than those needed to cause gross outward symptoms of intoxication can have a substantial adverse effect on a driver's judgment." *Id.*

■ The court of appeals' requirement that the officer observe at least one of the commonly-known physical indicia of intoxication is inconsistent with decisions of the United States Supreme Court and of this court both with respect to probable cause and with respect to the lesser reasonable suspicion standard. As the Court recently stated in *Ornelas v. United States,* 517 U.S. 690, 695–96, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996):

Articulating precisely what "reasonable suspicion" and "probable cause" mean is not possible. They are common-sense, nontechnical conceptions that deal with "'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'"

*Illinois v. Gates,* 462 U.S. 213, 231, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) (quoting *Brinegar v. United States,* 338 U.S. 160, 175, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949)); *see United States v. Sokolow,* 490 U.S. 1, 7–8, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989). As such, the standards are "not readily, or even usefully, reduced to a neat set of legal rules." *Gates, supra,* at 232, 103 S.Ct. 2317. We have described reasonable suspicion simply as "a particularized and objective basis" for suspecting the person stopped of criminal activity, *United States v. Cortez,* 449 U.S. 411, 417–418, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981), and probable cause to search as existing where the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found, *see Brinegar, supra,* at 175–176, 69 S.Ct. 1302; *Gates, supra,* at 238, 103 S.Ct. 2317. We have cautioned that these two legal principles are not "finely-tuned standards," comparable to the standards of proof beyond a reasonable doubt or of proof by a preponderance of the evidence. *Gates, supra,* at 235, 103 S.Ct. 2317. They are instead fluid concepts that take their substantive content from the particular contexts in which the standards are being assessed. *Gates, supra,* at 232, 103 S.Ct. 2317; *Brinegar, supra,* at 175, 69 S.Ct. 1302 ("The standard of proof [for probable cause] is * * * correlative to what must be proved"); *Ker v. California,* 374 U.S. 23, 33, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963) ("This Cour[t] [has a] long-established recognition that standards of reasonableness under the Fourth Amendment are not susceptible of Procrustean application"; "[e]ach case is to be decided on its own facts and circumstances" (internal quotation marks omitted)); *Terry v. Ohio,* 392 U.S. at 29, 88 S.Ct. 1868 (the limitations imposed by the Fourth Amendment "will have to be developed in the concrete factual circumstances of individual cases").

The *Ornelas* Court therefore held:

[A]s a general matter determinations of reasonable suspicion and probable cause

should be reviewed *de novo* on appeal. Having said this, we hasten to point out that a reviewing court should take care both to review findings of historical fact only for clear error and to give due weight to inferences drawn from those facts by resident judges and local law enforcement officers. *Ornelas*, 517 U.S. at 699, 116 S.Ct. 1657. In other words, in this case we review the district court's findings of historical fact relating to the probable cause determination for clear error under the clearly erroneous standard but we independently review *de novo* the issue of probable cause. *State v. Wiernasz*, 584 N.W.2d 1 (Minn. 1998); *State v. Shoen*, 578 N.W.2d 708 (Minn.1998).

■ Here, Edwin complained to Officer Wayne that her arm or wrist was broken, which by definition would constitute "substantial bodily harm" under Minn.Stat. § 609.02, subd. 7(a) (1996) ("fracture of any bodily member"). Therefore, Officer Wayne had an objective basis for investigating the felony offense of criminal vehicular operation resulting in substantial bodily harm, as well as the gross misdemeanor offense of criminal vehicular operation resulting in bodily harm. Officer Wayne knew that the accident was a single-vehicle motorcycle accident that occurred at a point in the road the defendant had traversed in the other direction just moments earlier. This evidence suggested negligent driving on the defendant's part— the sort of inattentive driving indicative of the defendant being under the influence of alcohol. *See Storvick*, 428 N.W.2d at 60; *Speak*, 339 N.W.2d at 745. Officer Wayne knew that the accident occurred at around 3:00 a.m., "[t]he time of day that, when an accident such as this occurs, drinking is often found to be involved." *Storvick*, 428 N.W.2d at 60. Further, according to Officer Wayne, the defendant was "pretty incoherent, was flopping around and making a lot of noises as if he was in a lot of pain, wouldn't respond to my questions I was asking him." Such be-

havior is certainly consistent with defendant being under the influence of alcohol. Moreover, Edwin told Officer Wayne that she and the defendant had been at a party and that she had been drinking, but she could not say if defendant had been drinking. Taken together, these facts support the existence of probable cause in this case. Edwin further told Officer Wayne that shortly before the accident defendant had stopped the motorcycle and accidently tipped it over. This also suggests defendant may have been under the influence of alcohol. Finally, the accident occurred on a curve in the road leading away from the park, and Officer Wayne knew from investigation that there were no skid marks in the roadway to indicate that defendant had attempted to apply his brakes as he approached a curve and that "the skid mark came straight off the corner of the roadway, as if the motorcycle hadn't turned to follow the curve." This, too, was properly part of the probable cause equation.[1]

Bearing in mind the probable cause standard summarized in *Ornelas, supra*, we conclude that when considered together, the factors we have discussed added up to provide Officer Wayne with probable cause to believe it was necessary to scientifically ascertain the defendant's blood alcohol level. Accordingly, we reverse the decision of the court of appeals and remand to the trial court for further proceedings.

---

1. One also can commit the crime of criminal vehicular operation if one drives in a negligent manner while knowingly under the influence of a hazardous substance or in a negligent manner while any amount of a schedule I or II controlled substance (other than marijuana or tetrahydro-cannabinols) is present in the person's body. *See* Minn.Stat. § 609.21, subd. 2a and b, *supra*. For a discussion of some of the various factors that bear on an officer's formation of an opinion that a suspect has used drugs, *see State v. Klawitter*, 518 N.W.2d 577 (Minn.1994).