STATE of Minnesota, Appellant,

v.

Candy Michelle SCOTT, Respondent.

No. C9–90–838.

Court of Appeals of Minnesota.

Aug. 6, 1991.

Teresa L. Joppa, Asst. City Atty., Moorhead, for appellant.

Bruce N. Ringstrom, Moorhead, for respondent.

Considered and decided by WOZNIAK, C.J., and NORTON and SCHUMACHER, JJ.

## OPINION

SCHUMACHER, Judge.

The trial court suppressed the results of a nonconsensual blood test taken after the implied consent advisory had been given. We affirm.

## FACTS

The parties stipulated to the following facts for the purpose of respondent Candy

Michelle Scott's motion to suppress evidence:

1) On January 10, 1990, at approximately 11:25 p.m., Officer Nielsen of the Moorhead Police Department investigated a two-vehicle accident.

2) Candy Michelle Scott was the driver of one of the vehicles. Ms. Scott's car had struck a car which was parked and unoccupied.

3) Officer Nielsen observed indicia of intoxication on Ms. Scott and properly arrested her for driving while under the influence of alcohol and for driving after revocation of her driving privileges.

4) Ms. Scott was transported by Officer Wychor of the Moorhead Police Department to St. Ansgar's Hospital in Moorhead.

5) At the hospital, Officer Wychor read the Minnesota Implied Consent Advisory to Ms. Scott. When asked, Ms. Scott refused to provide any type of test; breath, blood or urine.

6) Ms. Scott's driving privileges in the State of Minnesota were revoked under M.S.A. § 169.123 for an additional year.

7) The officers asked the hospital nurse to draw a blood sample from Ms. Scott and this was done. The sample was sealed and delivered to the lab for analysis.

8) The blood sample results showed an alcohol concentration of .17.

On April 5, 1990, the trial court determined that the results of the blood test should be suppressed. The state appeals from that decision pursuant to Minn.R.Crim.P. 28.04.

## ISSUE

Did the trial court properly suppress the results of Scott's blood test, taken and analyzed after her refusal to voluntarily submit to testing?

## ANALYSIS

■ In a pretrial appeal from an order suppressing evidence, the state must show that the trial court clearly erred in its judgment and the suppression of the evidence will have a critical impact on the outcome of the prosecution. *State v. Webber,* 262 N.W.2d 157, 159 (Minn.1977).

As a result of the January 10, 1990 accident, Scott was charged with driving while under the influence of alcohol in violation of Minn.Stat. § 169.121, subd. 1(a), (d) & (e) (Supp.1989). Because she refused to submit to any type of chemical test after being read the Minnesota implied consent advisory, Scott's license was revoked for one year. Scott's license had previously been revoked at the time of the accident. Thus the new one-year revocation was simply added to the prior revocation.

Despite Scott's refusal, a police officer asked a hospital nurse to draw a blood sample following her arrest. Analysis of the sample indicated Scott's blood alcohol concentration was .17. The test results were used as the basis for the criminal misdemeanor charges. Scott asserts the results of the blood test cannot be used as evidence against her in the criminal proceedings because she refused to voluntarily submit to the testing. She cites Minn.Stat. § 169.123, subd. 4 (Supp.1989) to support her position:

> If a person refuses to permit a test, none shall be given, but the peace officer shall report the refusal to the commissioner of public safety * * * Upon certification by the peace officer that there existed probable cause to believe the person had been driving * * * while under the influence of alcohol * * * the commissioner of public safety shall revoke the person's license * * * for a period of one year.

*Id.* (emphasis added).

The state argues, however, in a criminal prosecution such as this one, compliance with the implied consent law is not necessary and the results of the blood test should be admitted. In a criminal prosecution for DWI, the court may admit as evidence the results of a chemical test or the defendant's refusal to take a test. Minn. Stat. § 169.123, 2(b)(5) (Supp.1989).

■ The parties agree the state does not violate an individual's constitutional

rights when compelling the individual to submit to a blood test against his or her will and using the test result in a criminal prosecution. *Schmerber v. California*, 384 U.S. 757, 772, 86 S.Ct. 1826, 1836, 16 L.Ed.2d 908 (1966). Such a test is permitted only when the police have probable cause to believe an individual was driving under the influence of alcohol and the blood sample is necessary to preserve evidence of defendant's guilt. *Tyler v. Commissioner of Public Safety*, 368 N.W.2d 275, 278 (Minn.1985). The state may also offer an individual the choice of submitting to the test or refusing the test and having that refusal used as evidence in a criminal proceeding. *South Dakota v. Neville*, 459 U.S. 553, 563, 103 S.Ct. 916, 922, 74 L.Ed.2d 748 (1983). Here, the parties disagree on the issue of whether the results of a nonconsensual blood test may be used in a criminal prosecution *after* a police officer has given the implied consent advisory and the individual has refused to submit to a chemical test.

■ The Minnesota Supreme Court does not disapprove of procedures employed by police in which nonconsensual blood tests are taken where no implied consent advisory is given. Officers who investigate accidents involving a fatality or possible fatality need not give the implied consent advisory prior to obtaining a defendant's blood sample. *Tyler*, 368 N.W.2d at 277; *State v. Aguirre*, 295 N.W.2d 79, 81 (Minn.1980). When the implied consent advisory is not given, the results of a blood test may be used in the prosecution of a DWI. *Tyler*, 368 N.W.2d at 281. However, the results may not be used as the basis for license revocation pursuant to the implied consent law. *Id.*

Although *Schmerber* allows the state to compel an individual arrested for driving while intoxicated to submit to a blood alcohol test, the legislature has enacted the implied consent law to "avoid the violent confrontations which could occur when people are forced to submit to testing." *Nyflot v. Commissioner of Public Safety*, 369 N.W.2d 512, 517 (Minn.1985) (citing *Ne-*

*ville*, 459 U.S. at 559–60, 103 S.Ct. at 920–21).

■ This is not to say that an individual has a *right* to refuse testing. Rather, the purpose of the implied consent advisory is to inform the driver of the serious consequences of his or her refusal. *Nyflot*, 369 N.W.2d at 517. The onerous civil consequence of license revocation is designed to induce the driver to submit to testing. The minimum one-year revocation for refusal under the implied consent statute is hardly a " 'safe harbor,' free of adverse consequences." *Neville*, 459 U.S. at 566, 103 S.Ct. at 924. When compared to the 90-day minimum revocation for taking but failing the test, the civil consequences strongly compel the driver to take the test.

■ When an officer has properly arrested a driver for driving under the influence a test may be taken with or without the driver's consent. Once a decision has been made to utilize the implied consent law, however, an officer may not force the driver to submit to testing after the driver has refused. The implied consent law states in clear and unambiguous language that an officer shall not give a test if the driver refuses to permit one. Minn.Stat. § 169.123, subd. 4. The civil consequences of refusal, as a means for law enforcement officials to peaceably secure a test, would have no meaningful effect if an officer may simply compel a test once a refusal has been made.

We believe fundamental principles of fairness inherent in due process must prevent an officer from informing a person, pursuant to the implied consent advisory, that if testing is refused negative consequences will occur—*i.e.* license revocation, criminal sanctions and use of refusal as evidence in criminal prosecution—without also informing the individual that a test will be taken with or without that individual's consent.

The United States Supreme Court has also recognized that due process does not permit those who are perceived to speak for the state to mislead individuals as to either their legal obligations or the penal-

ties they might face should they fail to satisfy those obligations.

*McDonnell v. Commissioner of Public Safety,* 473 N.W.2d 848 (Minn.1991) (citing *Raley v. Ohio,* 360 U.S. 423, 79 S.Ct. 1257, 3 L.Ed.2d 1344 (1959)).

Scott was read the advisory and refused testing. Despite her refusal a test was performed which was for the basis of a criminal prosecution. Although the state was not required to provide Scott the opportunity to refuse, once so advised, the state may not render the advisory illusory by compelling a test over her refusal.

### DECISION

The trial court properly suppressed the evidence of Scott's blood test.

Affirmed.