**STATE of Minnesota, Respondent,**

v.

**Thomas George CONDON, Appellant.**

**No. C6–92–610.**

Court of Appeals of Minnesota.

Feb. 23, 1993.

Hubert H. Humphrey, III, Atty. Gen., Tom Foley, Ramsey County Atty., Clayton M. Robinson, Jr., Richard A. Newberry, Jr., Asst. County Attys., St. Paul, for respondent.

Michael C. Davis, St. Paul, for appellant.

Considered and decided by AMUNDSON, P.J., and HUSPENI and SCHUMACHER, JJ.

## OPINION

SCHUMACHER, Judge.

This appeal is from a judgment of conviction and sentence for criminal vehicular operation. Minn.Stat. § 609.21, subd. 1(3) (1990) (while having an alcohol concentration of .10 or more). Appellant Thomas George Condon challenges both his conviction and his sentence. We affirm.

## FACTS

Condon was convicted of criminal vehicular operation for causing the death of Rebecca Jolly while he was driving while intoxicated.

Condon was driving his pickup truck on the afternoon of July 27, 1991, on Case Avenue in St. Paul. Jolly was standing alongside the driver's-side door of her parked car. Jolly's children and a neighbor boy were either in the car or just exiting it. Jolly was struck by Condon's pickup truck and died later that afternoon at St. Paul Ramsey Medical Center. Bystanders reported that Condon attempted to flee the scene.

Condon admitted to police officers on the scene that he was driving the pickup truck and that his driver's license had been revoked. Officer Donald Banick noticed that Condon showed signs of intoxication and asked Condon to perform two field sobriety tests, which he failed. Officer Banick then placed Condon under arrest and took him to St. Paul Ramsey Medical Center to obtain a blood test.

Officer Banick read Condon the Implied Consent Advisory although he knew the incident involved potential felony charges of criminal vehicular operation. Condon at first asked for an attorney, then said he was not taking a test. Officer Banick construed this statement, which Condon repeated, as a refusal. However, the officer, who had been told of Jolly's death, directed the hospital staff to draw a blood sample from Condon. This sample was tested and showed an alcohol concentration of .27.

Condon moved to suppress the blood test on grounds that he was denied his *Friedman* right to counsel and that the taking of the test violated due process under *State v. Scott*, 473 N.W.2d 375, 377–78 (Minn.App. 1991). Condon also moved the trial court to declare the criminal vehicular operation statute unconstitutional. The trial court denied the defense motions. Condon then waived his right to a jury trial and the trial court found him guilty based on stipulated facts.

A hearing was held to consider the use of a 1986 gross misdemeanor DWI in calculating Condon's criminal history score. Condon, who was represented and advised by counsel in the 1986 proceeding, had pleaded guilty to this offense. Following testimony from the attorney who represented Condon at that time, the trial court ruled this conviction could be included in Condon's criminal history score.

The trial court sentenced Condon to 60 months, an upward departure from the presumptive sentence of 26 months. The trial court cited as grounds for departure his high blood alcohol level, his extensive traffic record and revoked driver's license, and his attempt to flee the scene.

## ISSUES

1. Should Condon's blood test have been suppressed because he had refused testing

or because he was denied access to counsel?

2. Is Minn.Stat. § 609.21, subd. 1(3) unconstitutional because it carries severe penalties without requiring *mens rea?*

3. Did the trial court err in including a prior conviction based on a guilty plea in Condon's criminal history score?

4. Did the court abuse its discretion in imposing a greater-than-double durational departure?

## ANALYSIS

1. Condon contends that this court's opinion in *Scott* compels the suppression of the blood alcohol test on due process grounds. He also argues that he was denied his right to counsel as recognized in *Friedman v. Commissioner of Pub. Safety*, 473 N.W.2d 828, 835 (Minn.1991).

■ This case, unlike *Scott,* involves a fatal accident, the seriousness of which was immediately apparent and gave the officer reason to believe the offense of criminal vehicular operation had been committed. The supreme court, in a line of cases, has held that the implied consent law need not be invoked in criminal vehicular operation investigations. *State v. Speak,* 339 N.W.2d 741, 744 (Minn.1983); *State v. Aguirre,* 295 N.W.2d 79, 81 (Minn.1980). When an officer has probable cause to believe a driver is intoxicated and has committed criminal vehicular operation, the officer may order the taking of a blood sample without obtaining the driver's consent. *Speak,* 339 N.W.2d at 745; *Aguirre,* 295 N.W.2d at 82. The necessity of immediate action to avoid the loss of this evidence is an exigent circumstance justifying the warrantless removal of blood. *Speak,* 339 N.W.2d at 744; *State v. Oevering,* 268 N.W.2d 68, 72 (Minn.1978).

■ This court in *Scott* found a due process violation in warning a driver about the negative consequences of refusal and then taking the test despite the driver's refusal. *Scott,* 473 N.W.2d at 377. Although the same sequence occurred here, the officer had ample grounds to believe Condon had committed criminal vehicular operation.

Thus, under *Aguirre* and *Speak,* the officer's reading of the Implied Consent Advisory was a superfluous act. Condon had no right to refuse testing. Therefore, the reading of the advisory could not have prejudicially misled him and the admission of the test does not violate due process.

■ Condon's claim that he was denied his *Friedman* right to counsel must fail under the same analysis. *Friedman* grants a defendant the limited right to consult with counsel to determine whether to take a test. 473 N.W.2d at 835. *Friedman* bases the right upon the driver's need to make a difficult decision, with alternative choices having legal ramifications. *Id.* at 833. However, if a driver has no choice in the matter, there is no need, and hence no right, to contact counsel.

■ 2. Condon argues that part of the criminal vehicular operation statute violates due process because it requires neither negligence nor intent. *See* Minn.Stat. § 609.21, subd. 1(3). The statute was amended in 1990 to eliminate the element of negligent driving by a defendant whose alcohol concentration was over .10. 1990 Minn.Laws ch. 602, art. 4, § 1. Condon argues that this amendment made the offense a strict liability offense, which violates due process because of the severity of the punishment attached.

The supreme court has noted there is "some uncertainty concerning the proper dividing line between strict liability offenses which are constitutional and those that are not." *State v. Strong,* 294 N.W.2d 319, 320 (Minn.1980). Criminal vehicular operation is derived from involuntary manslaughter, a common law offense which did not require criminal intent. *See generally* 1 Wayne R. LaFave and Austin W. Scott, Jr., *Substantive Criminal Law* § 2.1(b), at 90 (West 1986). Therefore, it is not clear that criminal intent must be read into the statute. *See Morrissette v. United States,* 342 U.S. 246, 251 n. 8, 252, 72 S.Ct. 240, 244 n. 8, 96 L.Ed. 288 (1952).

Our supreme court has held it does not violate due process to impose criminal liability for negligent acts. *State v. Eich,* 204

Minn. 134, 139, 282 N.W. 810, 813 (1938) ("The due process clause does not render unconstitutional a statute which compels a party to act at his peril").

The elimination of negligence from the criminal vehicular operation statute leaves the element of driving while intoxicated, which "comes close by itself to constituting criminal negligence." *State, City of St. Paul v. Dittel*, 464 N.W.2d 601, 603 (Minn. App.1991), *pet. for rev. denied* (Minn. Mar. 6, 1991). The statute does not impose criminal liability for traffic deaths caused by violations of *any* statute or ordinance. *Cf. Commonwealth v. Barone*, 276 Pa.Super. 282, 419 A.2d 457, 459 (1980) (discussing Pennsylvania vehicular homicide statute). Minn.Stat. § 609.21, subd. 1(3) does not criminalize "an action otherwise not criminal [which becomes] criminal merely because of the result." *Id.* 419 A.2d at 478, n. 17 (Spaeth, J., concurring). It still requires an act (DWI) which is both criminal and negligent. We conclude the statute does not violate due process.

▮ 3. Condon contends the 1986 aggravated DWI conviction should not have been used because the state failed to prove there was an adequate waiver of Condon's rights at the guilty plea hearing. Although there is no transcript or guilty plea petition, the state presented the testimony of the attorney who represented Condon, who testified that his practice was to fill out a plea petition with his client and fully explain his rights. Moreover, when a defendant is represented by counsel, it is assumed for purposes of collateral attack that his rights were protected. *State v. Warren*, 419 N.W.2d 795, 798 (Minn.1988). The state met its burden of proving the validity of the prior plea for enhancement purposes.

▮ 4. Condon argues that the trial court abused its discretion in sentencing him to 60 months, a greater-than-double departure. Condon's prior DWI convictions are not a proper aggravating factor because some were already counted in his criminal history score. *State v. Herrmann*, 479 N.W.2d 724, 729 (Minn.App. 1992), *pet. for rev. denied* (Minn. Mar. 19,

1992). However, the court properly cited Condon's extremely high alcohol concentration of .27. *State v. Williams*, 414 N.W.2d 781, 782 (Minn.App.1987), *pet. for rev. denied* (Minn. Jan. 15, 1988). The fact the fatality occurred in front of the victim's children is an additional aggravating factor, as is Condon's attempt to flee the scene. *State v. McGee*, 347 N.W.2d 802, 806 (Minn.1984); *State v. Profit*, 323 N.W.2d 34, 36 (Minn.1982). We conclude there were severe aggravating factors justifying a greater-than-double departure.

DECISION

The trial court properly held the blood test admissible. The criminal vehicular operation statute does not violate due process. Condon's criminal history score was properly calculated and the sentencing departure was supported by severe aggravating factors.

Affirmed.