STATE of Minnesota, CITY OF BELLE PLAINE, Appellant,

v.

James Robert STRADCUTTER, Respondent.

No. C3–97–373.

Court of Appeals of Minnesota.

Sept. 9, 1997.

Richard L. Swanson, Chaska, for Respondent.

Hubert H. Humphrey III, Attorney General, St. Paul, for Appellant.

Kari A. Lindstrom, Scott Joint Prosecution Association, Shakopee, for Appellant.

Considered and decided by AMUNDSON, P.J., and NORTON and PETERSON, JJ.

## OPINION

NORTON, Judge.

The state argues that the district court erred in suppressing the results of respondent's Intoxilyzer test because respondent did not have a right to consult with counsel before taking the test. Because respondent was read the implied consent advisory, he had a right to consult with counsel prior to taking the test. We affirm.

## FACTS

On May 12, 1996, at approximately 1:00 a.m., Officer Phil Nawrocki observed a vehicle drive through a stop sign and commit several other traffic violations in Belle Plaine, Minnesota. Nawrocki initiated a traffic stop and identified the driver as respondent James Robert Stradcutter. Stradcutter admitted to consuming alcohol and agreed to perform a field sobriety test. After administering the Alco-sensor test to Stradcutter, Nawrocki placed him under arrest for driving under the influence of alcohol.

After they arrived at the Scott County Jail, Nawrocki read Stradcutter the Minnesota Implied Consent Advisory. Stradcutter and Nawrocki engaged in a long conversation regarding Stradcutter's right to contact an attorney or contact his fiance so that she could contact an attorney or help him contact an attorney. Nawrocki would not allow Stradcutter to contact his fiance. Stradcutter eventually agreed to take the Intoxilyzer test despite the fact that he never consulted with an attorney. The Intoxilyzer test revealed a blood alcohol concentration of .13. Based on the results of the Intoxilyzer test, Stradcutter's driver's license was revoked.

Stradcutter was charged with: (1) driving while under the influence of alcohol in violation of Minn.Stat. § 169.121, subd. 1(a), (d), (e) (1996); (2) crossing the centerline in violation of Minn.Stat. § 169.18, subd. 1 (1996); and (3) failing to stop at a stop sign in violation of Minn.Stat. § 169.30 (1996). Stradcutter filed a motion to suppress the results of the Intoxilyzer test on the grounds that he was denied a reasonable opportunity to consult with counsel prior to administration of the test. Following a hearing, the district court issued an order granting Stradcutter's motion.

## ISSUE

Did the district court err by concluding that Stradcutter had a right to consult with counsel prior to taking the Intoxilyzer test?

## ANALYSIS

The state contends that the district court erred by suppressing the results of the Intoxilyzer test because Stradcutter did not have a right to consult with counsel prior to taking the test.

When reviewing a pretrial order suppressing evidence where the facts are not in dispute and the trial court's decision is a question of law, the reviewing court may independently review the facts and determine, as a matter of law, whether the evidence need be suppressed.

■ *State v. Othoudt,* 482 N.W.2d 218, 221 (Minn.1992). In a pretrial appeal, this court will reverse the district court only if the state demonstrates clearly and unequivocally, first, that the trial court erred in its judgment and, second, that unless reversed, the error will have a critical impact on the outcome of the trial. *State v. Kim,* 398 N.W.2d 544, 547 (Minn.1987).

The district court granted Stradcutter's motion to suppress the Intoxilyzer test results, observing that the implied consent statute gives a driver a limited right to consult with counsel prior to testing. *See Friedman v. Commissioner of Public Safety,* 473 N.W.2d 828, 835 (Minn.1991) (holding that driver has right to consult with counsel prior to chemical testing under the Minnesota Constitution). The district court stated that, by reading Stradcutter the implied consent advisory, Nawrocki gave Stradcutter the choice of whether to submit to testing. This choice, according to the district court, triggered Stradcutter's limited right to counsel under *Friedman. See State v. Condon,* 497 N.W.2d 272, 275 (Minn.App.1993) (*"Friedman* bases the right [to consult with counsel] upon the driver's need to make a difficult decision, with alternative choices having legal ramifications"). The district court concluded that Stradcutter was denied his right to consult with counsel before taking the test because Nawrocki refused to allow him to call his fiance so she could help him obtain counsel.

■ The state argues that the district court erred in suppressing Stradcutter's test results because, in a criminal DWI investigation, unlike a civil revocation proceeding, results of an Intoxilyzer test are admissible notwithstanding an officer's failure to allow the driver to consult with counsel prior to testing. Relying on *State v. Nielsen,* 530 N.W.2d 212 (Minn.App.1995), *review denied* (Minn. June 14, 1995), the state argues that an officer's failure to allow a driver to consult with counsel does not preclude admission of chemical test results in a criminal DWI proceeding.[1] We disagree. In *Nielsen,* the driv-

er was involved in a one-car accident and was taken to the hospital. *Id.* at 213. Without giving the implied consent advisory, the trooper asked the driver for a blood sample. *Id.* at 214. The driver agreed, believing that he had no choice. *Id.* The test revealed that the driver had a blood alcohol concentration of .16. *Id.* Although his driver's license was not revoked, gross misdemeanor driving charges were filed against him. *Id.* The defendant filed a motion, which the trial court granted, to suppress the chemical test results alleging that he had been denied his constitutional right to counsel. *Id.*

On appeal, this court addressed whether the trooper's failure to read defendant the implied consent statute violated the defendant's right to counsel. *Id.* This court concluded that defendant had no right to counsel under *Friedman. Id.* at 215. This court also noted that defendant's constitutional right to counsel had not been violated because the process of chemical testing in a DWI investigation is not a "critical stage" upon which the right to counsel attached. *Id.* Furthermore, referring to *Friedman,* this court noted that the defendant had no choice to refuse testing. Consequently, the lack of consultation with counsel would not impair his defense. *Id.*

This case differs from *Nielsen* because the implied consent advisory was read to Stradcutter and, unlike *Nielsen,* this is not a criminal negligence case. *Id.* at 214. Unlike the driver in *Nielsen,* Stradcutter had a choice regarding whether to submit to testing. Thus, Nawrocki's failure to allow Stradcutter to vindicate his *Friedman* right to counsel prior to testing precludes admission of the test results.

Next, to support the proposition that compliance with the procedures of the implied consent statute is not necessary in a criminal DWI prosecution, the state cites several cases where the implied consent advisory was read to the driver, but the officer failed to comply with the implied consent procedures. These cases, however, do not address the issue in this case, but rather, involve securing the requisite consent for a blood or

---

1. The parties concede that, if Stradcutter had a right to consult with counsel prior to taking the Intoxilyzer test, Nawrocki's failure to let Strad-

cutter call his fiance to help him obtain counsel was improper.

urine test. *See, e.g., State v. Aschnewitz,* 483 N.W.2d 107, 108–09 (Minn.App.1992) (holding that where driver consented to urine test, but was unable to produce a consensual urine sample, officer's taking of blood test without driver's further consent did not preclude admission of the blood test results because precise compliance with implied consent advisory is not required as the officer had probable cause to believe that driver had committed offense of DWI and exigent circumstances justified taking the blood sample); *State v. Halverson,* 413 N.W.2d 859, 861 (Minn.App.1987) (holding that officer's failure to offer driver choice between blood or urine test as required under the earlier version of implied consent statute did not preclude admission of test results because precise compliance with implied consent statute is not required); *State v. Pittman,* 395 N.W.2d 736, 738 (Minn.App.1986) (same).

■ The state alleges that the 1984 amendment to the implied consent statute eliminated compliance with implied consent procedures as a prerequisite to admissibility of test results in a criminal DWI case. The 1984 amendment removed the requirement that blood alcohol testing must be taken "voluntarily or pursuant to section 169.123," the implied consent statute, in order to be admissible in a DWI prosecution. *See* 1984 Minn. Laws ch. 622 § 7; *see also* Minn.Stat. § 169.121, subd. 2 (1984). Section 169.121, subdivision 2, deals strictly with the admission of test results in criminal prosecutions. No case holds that the 1984 amendment eliminates compliance with the *Friedman* right to counsel. Moreover, the *Friedman* right to counsel is a court-imposed rule; the 1984 amendment deals only with statutory requirements. Therefore, we do not agree that the amendment excuses the denial of the *Friedman* right to counsel.

■ Finally, the state claims that the district court erred in concluding that Stradcutter had a right to consult with counsel be-

cause the chemical testing stage of a DWI investigation is not a "critical stage" upon which the right to counsel attaches. *See Nielsen,* 530 N.W.2d at 215 (process of chemical testing in DWI investigation is not "critical stage" because driver is not faced with critical decision). We disagree. In this case, unlike *Nielsen,* Stradcutter was at a "critical stage" because he had been read the implied consent advisory and was faced with a choice regarding whether to submit to testing. This choice triggered the *Friedman* right to counsel. *See Friedman,* 473 N.W.2d at 835 (reading implied consent advisory gives driver a choice regarding whether to submit to chemical testing that has immediate consequences; this choice triggers limited right to consult with counsel); *see also State v. Christiansen,* 515 N.W.2d 110, 112 (Minn.App. 1994) (recognizing that where officer has read driver implied consent advisory, driver has limited right to consult with counsel prior to testing under *Friedman* ), *review denied* (Minn. June 15, 1994); *State v. Karau,* 496 N.W.2d 416 (Minn.App.1993) (recognizing that *Friedman* right to counsel requires suppression of chemical test results where officer read driver implied consent advisory but refused to let driver call his parents to get name of attorney). Because Stradcutter was denied his right to consult with counsel, the trial court properly suppressed Stradcutter's test results.[2]

## DECISION

Nawrocki read Stradcutter the implied consent advisory during the criminal DWI with counsel. Because Stradcutter was not allowed to consult with counsel before testing, the district court properly suppressed the test results.

**Affirmed.**

2. The state also relies on an unpublished opinion where this court held that notwithstanding the fact that the driver had been read the implied consent advisory and was denied her right to consult with counsel, the chemical test results were still admissible in the criminal DWI investigation. *State v. Petrie,* C7–95–534, 1995 WL 731300 (Minn.App. Dec. 12, 1995). The case is contrary to established precedent in Minnesota, and as an unpublished opinion, is not authoritative. *See Dynamic Air, Inc. v. Bloch,* 502 N.W.2d 796, 800–01 (Minn.App.1993) ("[T]he danger of miscitation [of unpublished opinions] is great" and "[t]he legislature has unequivocally provided that unpublished opinions are not precedential").