*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0591**

State of Minnesota,
Appellant,

vs.

Carmilla J. Thibodeau-Schoeszler,
Respondent.

**Filed September 2, 2014
Reversed and remanded
Stauber, Judge**

Stearns County District Court
File No. 73CR137892

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Matthew A. Staehling, St. Cloud City Attorney, Hao Nguyen, Assistant City Attorney, St. Cloud, Minnesota (for appellant)

Brian Nelson Steele, Heidi E. Viesturs, Steele Law Offices, P.L.L.C., Minnetonka, Minnesota (for respondent)

Considered and decided by Hudson, Presiding Judge; Stauber, Judge; and Kirk, Judge.

UNPUBLISHED OPINION

**STAUBER**, Judge

The state appeals from the district court's pretrial order suppressing results of a blood test obtained outside of the framework of the implied-consent law, but with respondent's consent. We reverse and remand.

## DECISION

Respondent Carmilla Thibodeau-Schoeszler was asked to submit to a blood test after she was arrested on suspicion of driving while intoxicated (DWI). The arresting officer did not read her the Minnesota Implied Consent Advisory or offer her an opportunity to contact an attorney. She agreed to a blood test, on the condition that she did not have to pay for it; the test results showed an alcohol concentration (BAC) of 0.16. The state did not invoke the implied-consent law and did not immediately revoke Thibodeau-Schoeszler's driver's license. In a pretrial hearing, the district court granted her motion to suppress the blood-test results, concluding that the mere exigency of rapid dissipation of alcohol did not justify a warrantless search and police failed to vindicate Thibodeau-Schoeszler's right to counsel, and dismissed the charge of driving with a BAC over 0.08. The state appeals from the suppression order.

When the facts are not disputed, we review the district court's pretrial suppression order as a question of law. *State v. Gauster*, 752 N.W.2d 496, 502 (Minn. 2008). In order to appeal a pretrial suppression order, the state must demonstrate not only that the district court erred, but also that suppression of the evidence would have a critical impact on the outcome of the trial. *State v. Trei*, 624 N.W.2d 595, 597 (Minn. App. 2001),

*review dismissed* (Minn. June 22, 2001). "Dismissal of a complaint satisfies the critical impact requirement." *Id.* Because the district court dismissed the BAC charge, the state has shown that the suppression order would have a critical impact on the outcome of the trial.

The district court noted that in *Missouri v. McNeely*, 133 S. Ct. 1552 (2013), the Supreme Court held that the dissipation of alcohol in the bloodstream is not a per se exigency that excuses the police from obtaining a search warrant before subjecting a suspected drunk driver to a nonconsensual blood test. But, the district court acknowledged that, although in Minnesota most DWI testing is obtained through the implied-consent procedure, "law enforcement officers can choose not to comply with the procedures outlined in the implied consent law." If an officer does not proceed under the implied-consent law, the results of chemical testing can be used in a DWI prosecution but the defendant cannot be charged with test refusal and the defendant's driver's license cannot be summarily revoked under the implied-consent law. *See Tyler v. Comm'r of Pub. Safety*, 368 N.W.2d 275, 280 (Minn. 1985) (suppressing blood-test results taken without implied-consent advisory in a license revocation proceeding but approving use of results in criminal prosecution); *State v. Nielsen*, 530 N.W.2d 212, 215 (Minn. App. 1995), *review denied* (Minn. Jun. 14, 1995); *State v. Scott*, 473 N.W.2d 375, 377 (Minn. App. 1991) (suppressing blood test results taken involuntarily from driver who was given implied-consent advisory and refused test, but noting that results could have been used if trooper proceeded without implied-consent advisory).

While these cases approve of the use of blood-test results taken outside of the implied-consent law, the courts relied primarily on the exigent factor of rapid dissipation of alcohol to reach this conclusion; the reasoning applied in these cases is that if there is probable cause to believe that a suspect was driving under the influence of alcohol, and there is a need to preserve evidence, the suspect has no right to refuse testing. *See, e.g., State v. Shriner*, 751 N.W.2d 538, 545 (Minn. 2008) (affirming warrantless blood test performed outside implied-consent law when police have probable cause that suspect committed DWI, to preserve evidence because of single-factor exigency of dissipation of alcohol), *abrogated by McNeely*, 133 S. Ct. 1552 (2013)); *Tyler*, 368 N.W. 2d at 278 (stating that warrantless blood testing "clearly permitted" if police have probable cause to believe defendant committed DWI and removal of blood was necessary to preserve evidence); *Nielsen*, 530 N.W.2d at 214 (approving removal of blood to preserve evidence when there is probable cause to believe suspect committed DWI); *Scott*, 473 N.W.2d at 376-77 (noting that nonconsensual blood testing is permissible when police have probable cause suspect committed DWI and blood testing is necessary to preserve evidence).

The district court is correct in concluding that after *McNeely*, a single-factor exigency based on the rapid dissipation of alcohol is not sufficient to avoid the warrant requirement. But exigency does not provide the only exception to the warrant requirement. As the supreme court stated in *State v. Brooks*, 838 N.W.2d 563, 568 (Minn. 2013), a person may voluntarily consent to a search, making a warrant

unnecessary.  Here, the record reflects that Thibodeau-Schoeszler voluntarily consented to the arresting officer's request that she undergo a blood test.

Thibodeau-Schoeszler argues that the district court nevertheless correctly suppressed the blood-test results because her right to counsel was not vindicated.  In *Friedman v. Comm'r of Pub. Safety*, 473 N.W.2d 828, 833 (Minn. 1991), the supreme court held that "a driver who has been stopped for a possible DWI violation and has been asked to submit to a chemical test is at a 'critical stage' in DWI proceedings, thus triggering the right to counsel."  While this appears straightforward, *Friedman* is an implied-consent case; the supreme court reasoned that the consequences of a driver's decision depended on the choice made and that a driver could be confused about this.  *Id.* In *Nielsen*, this court stated, "The right to counsel . . . does not attach until the commencement of formal judicial proceedings, or until the driver faces a critical decision regarding chemical testing."  530 N.W.2d at 215.  This court noted that the testing outside of the implied-consent framework "was merely an investigatory stage which necessarily preceded the decision to prosecute" and that Nielsen "faced no immediate revocation of his driver's license if he refused to take the blood test or failed the blood test."  *Id.*  Instead, Nielsen would face penalties only after a jury trial, at which he would have the right to counsel.  *Id.*

The right to counsel enunciated in *Friedman* was a "limited right to counsel within a reasonable time before submitting to testing."  473 N.W.2d at 837.  The majority in *Friedman* reasoned that "[i]n the case of a DWI, the chemical tests are more than just a search.  The act itself could produce the evidence leading to conviction before any trial is

even necessary." *Id.* This suggests that the court recognized that a driver arrested for DWI needs the assistance of counsel when choosing whether to take or refuse chemical testing because of the immediate implied-consent sanctions that would result from the choice made. This right to counsel is included now in the statutory sections governing implied consent. Minn. Stat. § 169A.51, subd. 2 (2012).

The constitutional right to counsel arises out of U.S. Const. amend. VI and Minn. Const. art. I, § 6. Both sections state that in all criminal prosecutions, the accused has the right to have the assistance of counsel in his or her defense. The Minnesota Supreme Court has interpreted this right under the Minnesota constitution more broadly than the federal right. *Friedman*, 473 N.W.2d at 836. This broader interpretation provides the basis for the limited right to consult an attorney before submitting to chemical testing under the implied-consent law. *Id.* at 832.

But traditionally, "[t]he Sixth Amendment right to counsel attaches as soon as the suspect is subject to adverse judicial proceedings by way of formal charge, preliminary hearing, indictment, information, or arraignment." *State v. Borg*, 806 N.W.2d 535, 545 (Minn. 2011) (quotations omitted). Therefore, during the investigatory phase before a judicial proceeding is commenced, the right to counsel does not attach. *Id.* A Fifth Amendment right to counsel arises when a suspect is subject to custodial interrogation, to protect a suspect from self-incrimination. *Id.* at 545-46. But a request to submit to chemical testing is not considered to be interrogation. *See State v. Whitehead*, 458 N.W.2d 145, 148 (Minn. App. 1990), *review denied* (Minn. Sep. 14, 1990).

6

Here, Thibodeau-Schoeszler was under arrest but had not been charged, indicted, or arraigned; the exception carved out in *Friedman* for a limited right to consult with counsel before submitting to chemical testing under the implied-consent law does not apply because the immediate sanctions of the implied-consent law could not be levied against her. Although earlier cases opined that suspects did not have the right to refuse testing, the single-factor exigency to preserve evidence because of the rapid dissipation of alcohol no longer excuses the necessity for a search warrant. But Thibodeau-Schoeszler consented to a warrantless search, a valid exception to the warrant requirement as set forth in *Brooks*. 838 N.W.2d at 568. A Fifth Amendment right to counsel does not apply because the arresting officer did not interrogate her until after she was booked into jail and he gave her a *Miranda* warning before doing so. We therefore reverse the district court's pretrial suppression order and remand this matter for trial.

**Reversed and remanded.**