*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1126**

Darrick Alan Duncan, petitioner,
Respondent,

vs.

Commissioner of Public Safety,
Appellant.

**Filed February 9, 2015
Reversed
Johnson, Judge**

Dakota County District Court
File No. 19AV-CV-14-527

Anthony J. Larson, Gerald Miller, P.A., Minneapolis, Minnesota (for respondent)

Lori Swanson, Attorney General, Kristi Nielsen, Assistant Attorney General, St. Paul, Minnesota (for appellant)

Considered and decided by Halbrooks, Presiding Judge; Johnson, Judge; and Larkin, Judge.

## UNPUBLISHED OPINION

**JOHNSON**, Judge

The commissioner of public safety revoked Darrick Alan Duncan's driver's license after he was arrested for driving while impaired. The district court rescinded the commissioner's revocation on the ground that Duncan's consent to the breath test was not

voluntary. We conclude that the totality of the circumstances shows that Duncan voluntarily consented to the breath test. Therefore, we reverse.

## FACTS

In the early morning hours of January 25, 2014, Officer Jason Jensen of the Lakeview Police Department observed a truck make an illegal U-turn by driving over a concrete median. Officer Jensen stopped the truck for the traffic violation and spoke with the driver, Duncan. Officer Jensen detected a strong odor of an alcoholic beverage and observed that Duncan's eyes were bloodshot and watery. After Duncan produced a Maryland driver's license, Officer Jensen determined that the license had been suspended. Officer Jensen administered a preliminary breath test, which indicated an alcohol concentration of .245.

Officer Jensen arrested Duncan on suspicion of driving while impaired (DWI). Officer Jensen transported Duncan to the police station, where he read Duncan the implied-consent advisory at 3:13 a.m. At Duncan's request, Officer Jensen found the telephone number for Duncan's Maryland attorney and provided it to him. Duncan called the Maryland attorney twice and left a message. While waiting for a call back, Duncan asked Officer Jensen about the consequences of refusal. Officer Jensen informed him that if he did not agree to chemical testing, he would be booked into the jail to await a court hearing. At approximately 4:00 a.m., Officer Jensen asked Duncan whether he would consent to a breath test. Duncan initially responded in the affirmative but then "expressed some confusion" over the process and asked whether he could consult with a local attorney. Officer Jensen agreed, and Duncan reached a local attorney and spoke

2

with the attorney for five to seven minutes. At 4:18 a.m., Duncan agreed to a breath test. The test revealed an alcohol concentration of .19. The commissioner revoked Duncan's driver's license pursuant to the implied-consent law.

In February 2014, Duncan petitioned the district court for judicial review of the commissioner's revocation of his driver's license. *See* Minn. Stat. § 169A.53, subd. 2 (2014). In April 2014, the district court held an implied-consent hearing. Duncan was represented by counsel but was not personally present. The parties stipulated to the facts contained in the police report, the implied-consent advisory form, and the DataMaster breath-test report. Officer Jensen testified. Duncan's counsel argued that Duncan was coerced into granting consent because he is a resident of another state and was confused.

The district court issued an order rescinding the commissioner's revocation on the ground that the warrantless breath test was unlawful because Duncan did not voluntarily consent to the test. The district court's order states that the commissioner "failed to make a sufficient case to establish [Duncan] knowingly and voluntarily consented to the search." The district court reasoned that Duncan did not have any prior arrests or convictions for DWI, was not a resident of Minnesota, and had expressed confusion over the process. The commissioner appeals.

## D E C I S I O N

The commissioner argues that the district court erred by rescinding Duncan's license revocation. The commissioner contends that the totality of the circumstances shows that Duncan voluntarily consented to the breath test. Duncan did not file a

responsive brief. The case will be resolved on the merits despite the absence of a responsive brief. *See* Minn. R. Civ. App. P. 142.03.

The Fourth Amendment to the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV; *see also* Minn. Const. art. I, § 10. A test of a person's breath constitutes a search for purposes of the Fourth Amendment. *Skinner v. Railway Labor Execs.' Ass'n*, 489 U.S. 602, 616–17, 109 S. Ct. 1402, 1413 (1989); *State v. Netland*, 762 N.W.2d 202, 212 (Minn. 2009), *abrogated in part by Missouri v. McNeely*, 133 S. Ct. 1552, 1568 (2013), *as recognized in State v. Brooks*, 838 N.W.2d 563, 567 (Minn. 2013), *cert. denied*, 134 S. Ct. 1799 (2014). As a general rule, a search requires either a warrant or an exception to the warrant requirement, such as the person's consent or the existence of exigent circumstances. *McNeely*, 133 S. Ct. at 1558; *Brooks*, 838 N.W.2d at 568. The exigency created by the dissipation of alcohol in a suspect's body is not a *per se* exception to the warrant requirement. *McNeely*, 133 S. Ct. at 1568. But the consent of the person whose breath is tested is an exception to the warrant requirement, in which case a police officer is not required to obtain a warrant. *Brooks*, 838 N.W.2d at 568. In an implied-consent case, the commissioner of public safety bears the burden of proving by a preponderance of the evidence that the driver voluntarily consented to chemical testing. *Johnson v. Commissioner of Pub. Safety*, 392 N.W.2d 359, 362 (Minn. App.

4

1986).  This court applies a clear-error standard of review to a district court's finding on the issue of consent.  *Jasper v. Commissioner of Pub. Safety*, 642 N.W.2d 435, 440 (Minn. 2002).

The supreme court held in *Brooks*, "Whether consent is voluntary is determined by examining the totality of the circumstances."  838 N.W.2d at 568 (quotation omitted).  The relevant circumstances include "'the nature of the encounter, the kind of person the defendant is, and what was said and how it was said.'"  *Id.* at 569 (quoting *State v. Dezso*, 512 N.W.2d 877, 880 (Minn. 1994)).  When considering the nature of the encounter, a court should ask how the police came to suspect the driver was under the influence, whether police read the driver the implied-consent advisory, and whether he had an opportunity to consult with an attorney.  *Id.*  The supreme court identified three primary reasons why Brooks's consent was voluntary and not coerced.  First, Brooks was read the implied-consent advisory, which "made clear to him that he had a choice of whether to submit to testing."  *Id.* at 572.  The supreme court reasoned that "[w]hile an individual does not necessarily need to know he or she has a right to refuse a search for consent to be voluntary, the fact that someone submits to the search after being told that he or she can say no to the search supports a finding of voluntariness."  *Id.* (citation omitted).  Second, Brooks had "the ability to consult with counsel," *id.* at 572, which the supreme court reasoned supports the conclusion that a defendant made a voluntary decision.  *Id.* at 572.  Third, Brooks "was neither confronted with repeated police questioning nor was he asked to consent after having spent days in custody."  *Id.* at 571 (citing *State v. High*, 287 Minn. 24, 27–28, 176 N.W.2d 637, 639 (1970)).  The supreme court reasoned that

5

"nothing in the record suggests that Brooks was coerced in the sense that his will had been overborne and his capacity for self-determination critically impaired." *Id.* (quotation marks omitted).

In this case, the undisputed facts indicate that Duncan voluntarily consented to the breath test in essentially the same manner as the appellant in *Brooks*. First, Duncan was stopped during a routine traffic stop, and Officer Jensen read the standard implied-consent advisory. Second, Officer Jensen provided Duncan with an opportunity to consult with an attorney, and Duncan actually did so. Third, the record does not contain any evidence that Duncan was repeatedly questioned, had spent days in custody, or otherwise was subjected to pressure to make a decision about whether to submit to chemical testing. *See id.* at 571-72. There simply is no meaningful difference between this case and *Brooks*.

Although Duncan did not file a responsive brief, we nonetheless note that the reasons stated by the district court do not justify its conclusion. The fact that Duncan is a resident of another state has little, if any, bearing on whether his consent to the breath test is valid. The implied-consent advisory is designed to give a driver sufficient information to make a decision about whether to submit to chemical testing, regardless whether the driver has a Minnesota driver's license or a license from another state. *See* Minn. Stat. § 169A.51, subd. 2 (2014); *State v. Scott*, 473 N.W.2d 375, 377 (Minn. App. 1991) ("The purpose of the implied consent advisory is to inform the driver of the serious consequences of his or her refusal."). In any event, Duncan was able to consult with a Minnesota attorney before deciding whether to consent. The fact that Duncan did not

6

have any prior DWI arrests may be relevant but is only one factor. The most important feature of the record is, as in *Brooks*, the complete absence of any evidence that Duncan "was coerced in the sense that his will had been overborne and his capacity for self-determination critically impaired." *See Brooks*, 838 N.W.2d at 571 (quotation marks omitted). In short, the totality of the circumstances shows that Duncan voluntarily consented to the breath test.

Thus, the district court clearly erred by concluding that the commissioner did not satisfy her burden of proving that Duncan consented to the breath test. Therefore, the district court erred by rescinding the revocation of Duncan's driver's license. In light of that conclusion, we need not consider the commissioner's other arguments for reversal.

**Reversed.**

7