**STATE of Minnesota, Appellant,**

v.

**Scott Ross HUNN, Respondent.**

**A16-2001**

Court of Appeals of Minnesota.

Filed June 19, 2017

Lori Swanson, Attorney General, St. Paul, Minnesota; and Kristen Nelsen, Mower County Attorney, Austin, Minnesota; and Scott A. Hersey, Special Assistant County Attorney, St. Paul, Minnesota (for appellant).

Brandon V. Lawhead, Lawhead Law Offices, Austin, Minnesota (for respondent).

Considered and decided by Bjorkman, Presiding Judge; Hooten, Judge; and Reyes, Judge.

## OPINION

REYES, Judge

The state appeals the district court's order granting respondent's motion to suppress urine-test results, arguing that the district court erroneously concluded that compliance with Minnesota's implied-consent law, including advisement of a suspect's limited right to counsel before consenting to chemical testing, is a prerequisite to the admissibility of chemical-test results in a criminal DWI prosecution. We reverse and remand.

## FACTS

On February 21, 2016, at approximately 1:09 a.m., a Mower County Deputy Sheriff (the deputy) pulled over respondent Scott Ross Hunn's vehicle for failing to stop at a stop sign. After identifying respondent, the deputy observed that respondent's eyes were bloodshot, glassy, and had abnormally dilated pupils. The deputy also noted that respondent appeared agitated, spoke abnormally fast, and shared odd information. Through his training and experience in law enforcement, the deputy considered these characteristics to be indicative of possible drug use. The deputy also smelled a slight odor of alcohol, and respondent admitted to having one beer.

After respondent failed two field sobriety tests, the deputy administered a preliminary breath test, which revealed an alcohol concentration of 0.024. The deputy then placed respondent under arrest for controlled-substance DWI. Next, respondent consented to the deputy's request for permission to search respondent's vehicle. A drinking straw, containing trace amounts of what field-tested positive for methamphetamine, was discovered during the search.

The deputy then transported respondent to the Mower County Jail and asked him, "Scott will you take a urine test and give me a sample?" Respondent replied, "Why not?" The deputy responded, "So yes." Respondent submitted a urine sample, which was sent to the Minnesota Bureau of Criminal Apprehension for laboratory testing. The deputy did not read respondent the implied-consent advisory or advise respondent that he had a limited right to speak to an attorney before testing.[1] On April 8, the deputy received respondent's test results, which indicated an alcohol concentration of 0.04 and the presence of methamphetamine and amphetamine.

Appellant State of Minnesota charged respondent with second-degree DWI (any amount of schedule I/II drugs), no proof of insurance, and possession of drug paraphernalia. Respondent moved to suppress the evidence and dismiss the complaint on a number of grounds, including the officer's failure to read the implied-consent

---

1. In the implied-consent context, the Minnesota Supreme Court has characterized a suspect's limited right to counsel as "the right, upon request, to a reasonable opportunity to obtain legal advice before deciding whether to submit to chemical testing." *Friedman v. Comm'r of Pub. Safety*, 473 N.W.2d 828, 835 (Minn. 1991).

advisory and the invalidity of respondent's consent to testing. The district court suppressed the urine-test results based on the deputy's failure to read respondent the implied-consent advisory, including his failure to advise respondent of, and vindicate, his limited right to counsel prior to submitting to testing. The district court also denied respondent's remaining motions, which are not disputed on appeal. The state's appeal follows.

## ISSUE

Did the district court err in suppressing chemical-test results in a criminal DWI prosecution where police did not invoke the implied-consent process and did not advise the suspect of the limited right to counsel before testing?

## ANALYSIS

When appealing a pretrial-suppression order, the state must clearly and unequivocally demonstrate that (1) the order will have a critical impact on the state's ability to successfully prosecute the defendant and (2) the order was erroneous. *State v. Scott*, 584 N.W.2d 412, 416 (Minn. 1998). Critical impact is shown "where the lack of the suppressed evidence significantly reduces the likelihood of a successful prosecution." *State v. Ault*, 478 N.W.2d 797, 799 (Minn. App. 1991) (quotation omitted). This court has held, and respondent does not dispute, that the suppression of chemical-test results in a criminal DWI prosecution meets this requirement. *See id.* Accordingly, the critical-impact requirement is satisfied, and the only question before this court is whether the district court's order was erroneous. Where the material facts are undisputed, as they are here with respect to the limited issue discussed below, our review of a pretrial-suppression order is de novo. *State v. Othoudt*, 482 N.W.2d 218, 221 (Minn. 1992).

In granting respondent's suppression motion, the district court relied on language from the implied-consent law, which provides that an individual "must be informed ... that the person has the right to consult with an attorney, but that this right is limited to the extent that it cannot unreasonably delay administration of the test." Minn. Stat. § 169A.51, subd. 2(a)(4) (2014). The district court also cited *Friedman* for the following propositions: (1) a driver has a right to consult an attorney before deciding whether to submit to chemical testing under the right-to-counsel clause in article 1, section 6 of the Minnesota Constitution and (2) a driver must be informed of this right and a police officer must assist in its vindication. Based on this reasoning, the district court suppressed the test results, due to the deputy's failure to read the implied-consent advisory, and declined to otherwise determine whether respondent's consent to the test was voluntary.

Under the implied-consent law, a chemical test may be required when an officer has probable cause to believe a person was driving while impaired, and the person has been lawfully arrested for DWI. Minn. Stat. § 169A.51, subd. 1(b)(1) (2014). When chemical testing is requested under the implied-consent law, the officer must read the implied-consent advisory and inform the person that: (1) Minnesota law requires the person to take a test to determine whether the person is under the influence; (2) refusal to take the test is a crime; and (3) the person has a limited right to consult with an attorney. *Id.*, subd. 2(a)(1), (2), (4) (2014). If a person refuses a test, "a test must not be given." Minn. Stat. § 169A.52, subd. 1 (2014). Upon such refusal, the commissioner of public safety must revoke the person's driver's license. *Id.*, subd. 3(a) (2014).

■ The state maintains that the district court's conclusion was erroneous, arguing that the limited right to counsel under *Friedman* is inapplicable here because respondent was not read the implied-consent advisory and, therefore, did not face immediate revocation of his driver's license. We agree and conclude that the district court erred in suppressing the test because respondent never faced a possibility of immediate sanctions under the implied-consent law when deciding whether to consent to the urine test. *See Tyler v. Comm'r of Pub. Safety*, 368 N.W.2d 275, 280 (Minn. 1985) ("Compliance with the procedures of the implied consent law is a prerequisite to revocation pursuant to the implied consent law.").

In *Friedman*, the commissioner of public safety issued Friedman a notice and order of revocation of her driver's license based on her refusal to take a breath test authorized by the implied-consent law. 473 N.W.2d at 829. The license revocation was sustained by the district court, and this court affirmed the district court's order. *Id.* The Minnesota Supreme Court granted review to decide whether Friedman's right to counsel attached upon the police officer's request for chemical testing. *See id.* In deciding this issue, the supreme court distinguished its right-to-counsel analysis in *Nyflot v. Comm'r of Pub. Safety*, 369 N.W.2d 512, 515-17 (Minn. 1985), where it had held that the right to counsel under the Sixth Amendment to the United States Constitution does not attach at the time a police officer requests chemical testing. *Id.* at 832. Instead, the supreme court held that, under the right-to-counsel clause in article I, section 6 of the Minnesota Constitution, a driver asked to submit to chemical testing as part of the implied-consent process is at a "critical stage," triggering a limited right to counsel. *Id.* at 832-33.

■ However, as this court has previously concluded, *Friedman* is an implied-consent case, and the limited right to counsel discussed therein applies only in situations where chemical testing is sought under the implied-consent law. *See State v. Nielsen*, 530 N.W.2d 212, 215 (Minn. App. 1995), *review denied* (Minn. June 14, 1995). In *Nielsen*, the issue before this court was whether "extraction of blood in a *criminal proceeding* for driving under the influence [is] a 'critical stage' as defined by *Friedman*." *Id.* at 214 (emphasis added). This court reasoned that "[t]he process of chemical testing in this case was merely an investigatory stage which necessarily preceded the decision to prosecute [criminal charges]," and "Nielsen faced no immediate revocation of his driver's license if he refused to take the blood test." *Id.* at 215. Accordingly, this court concluded that "[e]vidence of chemical testing is admissible in a criminal prosecution even if a police officer makes no attempt to read the suspect the implied consent advisory." *Id.* (citing *Tyler*, 368 N.W.2d at 281; *State v. Schauer*, 501 N.W.2d 673, 676-77 (Minn. App. 1993); *State v. Scott*, 473 N.W.2d 375, 377 (Minn. App. 1991)); *see also State v. Flermoen*, 785 N.W.2d 787, 790 (Minn. App. 2010) ("[W]e have consistently held that compliance with the testing procedures of the implied-consent law is a not a prerequisite for the admissibility of test results in a criminal DWI proceeding.").

Here, as in *Nielsen*, and unlike the facts presented in *Friedman*, the deputy did not read respondent the implied-consent advisory or seek chemical testing under the implied-consent law. This distinction from the facts of *Friedman* is significant. As a result, respondent's decision regarding whether to consent to testing never carried a possibility of immediate license-revocation sanctions or criminal prosecution for test refusal. Instead, respondent only "faces the traditional [criminal] penalties

for driving under the influence, and imposition of those penalties only after a jury trial at which he has the right to counsel." *Nielsen*, 530 N.W.2d at 215. Accordingly, "[t]he process of chemical testing in this case was merely an investigatory stage which necessarily preceded the decision to prosecute." *Id.* (citing *Friedman*, 473 N.W.2d at 833 (noting that ticket or tab charge, usually issued after test is performed, is equivalent to formal complaint)).

█ Because respondent was not read the implied-consent advisory, and, therefore, never faced immediate sanctions under the implied-consent law for test refusal, we conclude that there was no violation of the Minnesota Constitution's right-to-counsel clause that required the district court to suppress the chemical-test results. This conclusion is consistent with *Friedman*, *Nielsen*, and their progeny, where appellate analysis has turned on whether the defendant received the implied-consent advisory. *Compare Friedman*, 473 N.W.2d at 835 (concluding that, in implied-consent case where police gave implied-consent advisory, individual had limited right to consult with attorney before submitting to chemical testing), *and State v. Karau*, 496 N.W.2d 416, 418-19 (Minn. App. 1993) (concluding that, in criminal DWI case where police read implied-consent advisory, individual had limited right to consult with attorney before submitting to chemical testing), *with Nielsen*, 530 N.W.2d at 215 (concluding that, in criminal DWI case where police did not read implied-consent advisory, individual did not have limited right to consult with attorney before submitting to chemical testing). Here, unlike in *Friedman* and *Karau*, the deputy did not read the implied-consent advisory, meaning respondent did not face a critical stage prior to submitting to chemical testing.

## DECISION

The district court erred by suppressing the test results on the ground that the deputy did not read the implied-consent advisory or advise respondent of his limited right to counsel. The state has clearly and unequivocally demonstrated critical impact and an erroneous order. But, as noted above, respondent also sought to suppress the test results based on an invalid consent to testing. Because the district court did not make any findings or a conclusion regarding the validity of respondent's consent to the test, we reverse the district court's suppression of the test results based on a failure to read the implied-consent advisory and remand for further proceedings, including a determination of whether respondent voluntarily consented to the deputy's testing request.

**Reversed and remanded.**